IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

JOHN PUPUHI BAKER, JR., )
individually and as Trustee )
of the Revocable Trust of )
John Pupuhi Baker, Jr.; DIANE )
T. BAKER, individually and as )
Trustee of The Revocable )
Trust of Diane Theresa Baker; )
BRANDEN H. BAKER; KIM SALVA )
CRUZ BAKER, individually and )
on Behalf of a Class of All )
Persons Similarly Situated, )
                             )
           Plaintiffs, )
      vs. )
                             )
CASTLE & COOKE HOMES HAWAII, )
INC., a Hawaii Corporation; )
ZURN INDUSTRIES, LLC, a )
Delaware Limited Liability )
Corporation; ZURN PEX, INC., )
a Delaware Corporation; S.H. )
LEGITT Co., a Michigan )
Corporation d/b/a MARSHALL )
BRASS; WATTS RADIANT, INC., a )
Delaware Corporation; WATTS )
WATER TECHNOLOGIES, INC., a )
Delaware Corporation; JOHN )
and JANE DOES 1-100; DOE )
PARTNERSHIPS 1-100; DOE )
CORPORATIONS 1-100; DOE )
GOVERNMENTAL AGENCIES 1-100; )
and DOE ASSOCIATIONS 1-100, )
                             )
           Defendants. )
_____ )

CIVIL NO. 11-00616 SOM-RLP

ORDER (1) GRANTING IN PART
DEFENDANT ZURN INDUSTRIES,
LLC, AND ZURN PEX, INC.S'
MOTION TO DISMISS THE FIRST
AMENDED CLASS ACTION
COMPLAINT, OR, IN THE
ALTERNATIVE, MOTION FOR A
MORE DEFINITE STATEMENT, AND
DENYING DEFENDANT ZURN
INDUSTRIES, LLC, AND ZURN
PEX, INC.S' MOTION FOR
SUMMARY JUDGMENT, AND (2)
DENYING CASTLE & COOKE'S
MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT AND
DIRECTING PLAINTIFFS TO
SUBMIT MATERIALS

ORDER (1) GRANTING IN PART DEFENDANT ZURN INDUSTRIES, LLC, AND
ZURN PEX, INC.S' MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION
COMPLAINT, OR, IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE
STATEMENT, AND DENYING DEFENDANT ZURN INDUSTRIES, LLC, AND ZURN
PEX, INC.S' MOTION FOR SUMMARY JUDGMENT, AND
(2) DENYING CASTLE & COOKE'S MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT AND DIRECTING PLAINTIFFS TO SUBMIT MATERIALS.

I.        INTRODUCTION.

        This is a putative class action filed by homeowners who

allege that their homes have a construction defect.  They allege

that their plumbing systems include brass fittings susceptible to

corrosion and likely to cause leaks.  They bring this action

against the developer of their homes and the manufacturers of the

brass fittings.

        Defendants Zurn Industries, LLC, and Zurn Pex, Inc.

(collectively, "Zurn"), two manufacturers of the allegedly

defective brass fittings, seek dismissal, or, in the alternative,

a more definite statement, of five of the six claims Plaintiffs

assert against them in the First Amended Complaint.  Zurn moves

for summary judgment on the sixth claim and alternatively seeks

summary judgment on one of the five claims it seeks to have

dismissed.  The court grants in part the motion to dismiss and

denies the motion for summary judgment.

        Defendant Castle & Cooke Homes Hawaii, Inc. ("Castle &

Cooke"), the developer, seeks dismissal of the First Amended

Complaint on the ground that Plaintiffs have not complied with

Hawaii's Contractor Repair Act, chapter 672E of Hawaii Revised

Statutes, which requires, among other things, a plaintiff to give a contractor the results of any testing done before filing an action against that contractor. Because, on the present record, the court cannot determine certain facts essential to ruling on Castle & Cooke's motion, the court here denies the motion but orders Plaintiffs to submit the material described in this order by the stated deadline. If Plaintiffs do not comply with this order, Castle & Cooke's motion may be granted or the claims against it stayed. If Plaintiffs meet the deadline but Castle & Cooke continues to assert a chapter 672E violation, Castle & Cooke should so inform the court. Depending on what Castle & Cooke's submissions state, the court may reinstate Castle & Cooke's motion as if never ruled on.

II.     FACTUAL BACKGROUND.

Plaintiffs John Pupuhi Baker and Diane T. Baker own a home in the Mililani Mauka subdivision. First Amended Complaint ("Complaint") ¶¶ 3,5, Oct. 20, 2011, ECF No. 7. They purchased their home from Castle & Cooke on December 16, 2005, before it was completely constructed. Id. ¶ 3. The home was completed in or around March 2006. Id. On December 20, 2003, Plaintiffs Branden H. Baker and Kim Salva Cruz Baker purchased their home in the same subdivision from Castle & Cooke. Id. ¶ 5. Construction began and was completed shortly thereafter. Id.

Plaintiffs' homes were built using pipes made of flexible plastic called cross-linked polyethylene ("PEX"). The PEX pipes are joined together by a fitting made of "yellow brass." Id. ¶¶ 22, 23, 37. The focus in this case is on the yellow brass fittings. The Complaint states that Plaintiffs want to represent the class of individuals who own homes in Miliani Mauka built by Castle & Cooke with yellow brass fittings. Id. ¶ 83.

Plaintiffs allege that yellow brass is particularly susceptible to dezincification, a corrosion process in which zinc leaches into potable water that comes into contact with the brass. Id. ¶ 36. According to Plaintiffs, as the brass corrodes, it becomes porous and mechanically weak. Id. Plaintiffs further allege that the PEX systems in the putative class members' homes have begun to, or are about to, leak water into the walls, ceilings, and floors of their homes. Id. ¶ 72. Plaintiffs allege that the leakage will cause water damage and mold growth, exposing the occupants to toxins. Id. ¶ 76.

Defendants Zurn, Watts Radiant, Inc., Watts Water Technologies, Inc., and S.H. Legitt Co. allegedly manufactured and sold Castle & Cooke the PEX piping and the yellow brass fittings in issue. See id. ¶¶ 14, 15, 16, 19, 23. Plaintiffs allege that Zurn "has concealed from developers, designers, contractors and homeowners that fittings made from Yellow Brass

corrode (dezincify) and fail when used in PEX Systems that distribute potable water in the United States." Id. ¶ 50.

Plaintiffs filed this putative class action in state court on July 20, 2011. Notice of Removal of State Court Action to Federal Court, Oct. 14, 2011, ECF No. 1. The Watts Defendants removed the action to federal court on October 14, 2011, pursuant to 28 U.S.C. § 1332(d)(2). Id. ¶ 5. On October 20, 2011, Plaintiffs filed their First Amended Complaint, asserting eight claims against Castle & Cooke, six against Zurn and the Watts Defendants, and five against S.H. Legitt.[1] Defendant Zurn now seeks dismissal of five of the six claims against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Zurn alternatively seeks summary judgment on one of those five claims pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. Zurn also seeks summary judgment on a sixth claim. Castle & Cooke seeks dismissal of the action against it on the ground that Plaintiffs have not complied with chapter 672E of Hawaii Revised Statutes.

At the hearing on the present motions, the crux of Zurn's argument was that, because their yellow brass fittings have not failed to date, Plaintiffs fail to allege, and have no evidence showing, that they have suffered any actual injury.

---

[1] Plaintiffs have since dismissed the Watts Defendants from this action. See ECF No. 57.

Plaintiffs responded that, even if the fittings have not failed as of today, failure in the future is inevitable.

Whether Plaintiffs have suffered any injury, or whether Plaintiffs are attempting to proceed based solely on future injury, implicates Plaintiffs' standing to bring this action, as well as whether this case is ripe for adjudication.  Because issues of standing and ripeness go to this court's subject-matter jurisdiction, the court asked the parties to submit supplemental briefing on whether this case should be dismissed pursuant to Rule 12(b)(1).  In supplemental briefs, Zurn argues that dismissal is appropriate because Plaintiffs lack standing, and Castle & Cooke argues that dismissal is appropriate because Plaintiffs' claims are not ripe.

III.    SUBJECT-MATTER JURISDICTION.

Zurn challenges Plaintiffs' standing to proceed, while Castle & Cooke challenges Plaintiffs' claims as unripe.  The court construes their arguments as factual attacks on this court's subject-matter jurisdiction.

A.    Legal Standard.

Article III, section 2, of the United States Constitution sets forth constitutional limits on a court's subject-matter jurisdiction; it confines federal courts to deciding cases or controversies.  No case or controversy exists when a plaintiff lacks standing to make the claims asserted or

when a case is not ripe for adjudication.  <u>Cetacean Cmty. v.</u>
<u>Bush</u>, 386 F.3d 1169, 1174 (9th Cir. 2004); <u>Thomas v. Anchorage</u>
<u>Equal Rights Comm'n</u>, 200 F.3d 1134, 1139 (9th Cir. 1999) (en
banc).  A federal court therefore does not have subject-matter
jurisdiction over a suit by a plaintiff who lacks standing or a
suit that is not ripe.  <u>See</u> <u>White v. Lee</u>, 227 F.3d 1214, 1242
(9th Cir. 2000) (stating that standing pertains to a federal
court's subject-matter jurisdiction); <u>St. Clair v. City of Chico</u>,
880 F.2d 199, 201 (9th Cir. 1989) (stating that ripeness pertains
to the court's subject-matter jurisdiction).

A motion to dismiss for lack of standing or ripeness is
a motion under Rule 12(b)(1), which expressly provides for a
motion to dismiss that asserts the defense of "lack of subject-
matter jurisdiction."  Such a motion may either attack the
allegations of the complaint as insufficient to confer subject-
matter jurisdiction upon the court, or attack the existence of
subject-matter jurisdiction in fact.  <u>Safe Air for Everyone v.</u>
<u>Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004).  When the motion to
dismiss attacks the allegations of the complaint as insufficient
to confer subject-matter jurisdiction--a facial challenge--all
allegations of material fact are taken as true and construed in
the light most favorable to the nonmoving party.  <u>Fed'n of</u>
<u>African Am. Contractors v. City of Oakland</u>, 96 F.3d 1204, 1207
(9th Cir. 1996).  When the motion to dismiss is a factual attack

7

on subject-matter jurisdiction, no presumption of truth attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the existence of subject-matter jurisdiction in fact. Safe Air for Everyone, 373 F.3d at 1039.

      B.   Standing.

To establish standing, a plaintiff must demonstrate three things. First, the plaintiff must suffer an "injury-in-fact," which means that there must be a concrete and particularized "invasion of a legally protected interest" and the invasion is actual or imminent. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Second, the injury must be fairly traceable to the challenged action. Third, a favorable decision must be likely to redress the injury. Id. It is the first element (injury-in-fact) that is in issue here.

Although the burden of establishing standing lies with the party asserting federal jurisdiction, the manner and degree of evidence necessary to meet this burden may vary depending on the stage of litigation. Id. at 561. At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." Id. (internal citations and quotations omitted). After the pleading stage, the burden on a plaintiff increases. The present motion challenging standing

comes at the outset of the case, when no discovery has been taken.

Zurn contends that Plaintiffs do not have standing to bring this action because, as no pipes have failed and Plaintiffs have not experienced any leaks in their homes, they have not suffered an injury-in-fact. Plaintiffs argue that the fittings need not have actually failed for an injury to have occurred. The court agrees with Plaintiffs.

"Standing merely requires a redressable injury that is fairly traceable to [a defendant's] conduct. Whether a plaintiff can recover for that injury under a particular theory of liability is a separate question." In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, Products Liability Litigation ("Toyota"), 754 F. Supp. 2d 1145, 1161 (C.D. Cal. 2010). An injury-in-fact for standing purposes may be "the possibility of future injury." Krottner v. Starbucks Corp., 628 F.3d 1139, 1142 (9th Cir. 2010) (quoting Cent. Delta Water Agency v. United States, 306 F.3d 938, 947 (9th Cir. 2010)). The Ninth Circuit has held that the threat of future harm is sufficient if the threat is "credible" and "both real and immediate, not conjectural or hypothetical." Id. (holding that the plaintiffs adequately pled an injury-in-fact by alleging that they had an increased risk of future identify theft stemming from the theft of a laptop containing their unencrypted personal data) (quoting

<u>Cent. Delta Water</u>, 306 F.3d at 947, and <u>City of L.A. v. Lyons</u>, 461 U.S. 95, 102 (1983)); <u>Scott v. Pasadena Unified School Dist.</u>, 306 F.3d 646, 656 (9th Cir. 2002).

Citing United States Supreme Court cases on the issue, the Second Circuit has held, "an injury-in-fact differs from a 'legal interest'; an injury-in-fact need not be capable of sustaining a valid cause of action under applicable tort law. An injury-in-fact may simply be the fear or anxiety of future harm." <u>Denney v. Deutsche Bank AG</u>, 443 F.3d 253, 263-64 (2d Cir. 2006). The Second Circuit explained:

> For example, exposure to toxic or harmful substances has been held sufficient to satisfy the Article III injury-in-fact requirement even without physical symptoms of injury caused by the exposure, and even though exposure alone may not provide sufficient ground for a claim under state tort law. <u>See</u> [<u>Whitmore v. Arkansas</u>, 495 U.S. 149, 155 (1990)]("Our threshold inquiry into standing 'in no way depends on the merits of the [plaintiff's claim.]'") (quoting [<u>Warth v. Seldin</u>, 422 U.S. 490, 500 (1975)]); <u>In re Agent Orange Prod. Liab. Litig. (Ivy v. Diamond Shamrock Chemicals Co.)</u>, 996 F.2d 1425, 1434 (2d Cir. 1993) (rejecting argument that "injury in fact means injury that is manifest, diagnosable or compensable") (internal quotation marks omitted), <u>overruled in part on other grounds by Syngenta Crop Prot., Inc. v. Henson</u>, 537 U.S. 28, 123 S. Ct. 366, 154 L. Ed. 2d 368 (2002); Wright, Miller & Kane, supra, § 1785.1 ("[T]his requisite of an injury is not applied too restrictively. If plaintiff can show that there is a possibility that defendant's conduct may have a future effect, even if injury has not yet occurred, the court may hold that standing has been

satisfied."). The risk of future harm may
also entail economic costs, such as medical
monitoring and preventative steps; but
aesthetic, emotional or psychological harms
also suffice for standing purposes. <u>See</u> <u>Ass'n</u>
<u>of Data Processing Serv. Orgs., Inc. v. Camp</u>,
397 U.S. 150, 154, 90 S. Ct. 827, 25 L. Ed.
2d 184 (1970). Moreover, the fact that an
injury may be outweighed by other benefits,
while often sufficient to defeat a claim for
damages, does not negate standing. <u>See</u>
<u>Sutton</u>, 419 F.3d at 574-75 (holding that the
increased risk that a faulty medical device
may malfunction constituted a sufficient
injury-in-fact even though the class members'
own devices had not malfunctioned and may
have actually been beneficial).

<u>Id.</u>

In the present case, Plaintiffs allege that the yellow
brass fittings installed in their homes have failed or will soon
begin to fail. They allege that the failure will damage their
homes and expose them to dangerous toxins that will cause
physical injury. The allegation that the fittings have already
failed would constitute a present injury; however, at the hearing
on this motion, Plaintiffs repeatedly conceded that none of the
fittings in their homes has failed to date. In arguing that they
nevertheless have standing to sue, Plaintiffs rely on the
declaration of Randy Kent, an engineer who says he has been
investigating failures in PEX systems for more than four years.
Kent says that the fittings in the Mililani Mauka homes "will
corrode until they catastrophically fail" and that the corrosion
"cannot be stopped." Decl. of Randy K. Kent ¶ 12, ECF No. 58-1.

11

This threat of injury is credible for Article III standing purposes. With respect to the requirement that the threat of injury also be immediate, Plaintiffs contend that the corroded pipes will leak soon given the tremendous water pressure they are under. Transcript of Proceedings on Feb. 13, 2012, at 28:3-13, ECF No. 52 ("Transcript").

Even if the court could not rely on the allegations that the pipes will soon leak, the court would conclude that, for standing purposes, Plaintiffs have a sufficient injury-in-fact in the form of their alleged economic loss. They provide declarations stating that the PEX systems in their homes are inherently defective and violate the Honolulu Plumbing Code. See Decl. of Randy Kent ¶ 6; Decl. of Fred Volkers ¶ 19, ECF No. 58-2. They say that they must therefore replace their entire PEX systems. Dec. of Randy Kent ¶ 12. At the hearing, Plaintiffs argued that the value of their homes has already actually decreased because they cannot sell or refinance their homes given the Honolulu Plumbing Code violations. Plaintiffs also argue in their opposition to Zurn's motion to dismiss that the inherent construction defects and code violations rob them of the benefit of the bargain they made in buying their homes.

The consideration of economic loss allegations in the context of analyzing whether a plaintiff has been injured for standing purposes is sometimes distinguished from the

consideration of economic loss allegations for Rule 12(b)(6)

purposes.  The United Stated District Court for the Central

District Court of California, in Toyota, had before it plaintiffs

who sought to represent the class of individuals and businesses

that had purchased allegedly defective vehicles.  The plaintiffs

sought damages for the alleged diminution in the market value of

their vehicles.  Toyota, 754 F. Supp. 2d at 1155, 1160.  They

alleged that certain Toyota models suffered from a defective

throttle system that, in some situations, caused "sudden

unintended acceleration" ("SUA") that had led to at least two

serious accidents.  Id. at 1156-57.  Most of the putative class

members had experienced no SUA.  Id. at 1161.  The plaintiffs

asserted, among other claims, that Toyota had violated various

California consumer protection laws and breached express and

implied warranties.  Id. at 1155.  The plaintiffs asserted no

tort claims.  Id.

        The Toyota plaintiffs proceeded primarily on the theory

that, having not received the "benefit of their bargain" to buy

safe vehicles, they had sustained economic loss.  Id. at 1165-66.

Relying on the Fifth Circuit's reasoning in Cole v. General

Motors Corp., 484 F.3d 717, 722-23 (5th Cir. 2007), Judge Selna

held that "'overpayment, loss in value, or loss of usefulness' is

sufficient to confer standing."[2] Toyota, 754 F. Supp. 2d at 1162 (quoting Cole, 484 F.3d at 723).

Cole, another vehicle defect case, involved side air bags that allegedly deployed unexpectedly. 484 F.3d at 722-23. The plaintiffs in Cole had air bags that had never actually inadvertently deployed. They sought the difference between the diminished value of their vehicles and vehicles that satisfied warranties. The Fifth Circuit explained:

---

[2] According to press reports, Judge Selna has recently announced a tentative ruling in Toyota, in which he indicates that claims brought by plaintiffs in Florida and New York alleging only economic loss may be dismissed. See Ciaran McEvoy, Economic Damages Litigation Against Toyota May Shrink, DAILY JOURNAL; Toyota, Case No. 8:10-ml-02151-JVS-FMO in the United States District Court for the Central District of California, Minutes of Hearing Re: Defendants' Motion to Dismiss the Claims of All New York and Florida Plaintiff, Apr. 23, 2012, ECF No. 2444. (The California case has been consolidated with cases from Florida and New York.) This court does not have the tentative ruling.

According to the Daily Journal, the tentative ruling states that class representatives in Florida and New York cannot sue for economic damages if they failed to allege that their vehicles actually exhibited SUA. California class representatives may be allowed to proceed.

Even assuming Judge Selna's tentative ruling is eventually incorporated into an actual filed order, that order will not affect this court's standing analysis. Judge Selna is presently addressing motions to dismiss for failure to state a claim, not motions to dismiss for lack of subject-matter jurisdiction. Thus, his tentative ruling turns on the laws of several states, not on the jurisdictional requirements addressed in his Toyota order relied on here. The tentative ruling is thus apparently dealing with issues addressed by this court in Part IV of the present motion.

14

Plaintiffs seek recovery for their actual
economic harm (e.g., overpayment, loss in
value, or loss of usefulness) emanating from
the loss of their benefit of the bargain.
Notably in this case, plaintiffs may bring
claims under a contract theory based on the
express and implied warranties they allege.
Whether recovery for such a claim is
permitted under governing law is a separate
question; it is sufficient for standing
purposes that the plaintiffs seek recovery
for an economic harm that they allege they
have suffered.

Id. at 723. Adopting the Fifth Circuit's reasoning, Judge Selna

concluded that the Toyota plaintiffs had sufficiently established

injury in the form of the diminished value of their homes or

diminished sales proceeds upon selling their vehicles. Id. at

1166.

Plaintiffs in the present case do not expressly allege

a diminution in the value of their homes. They refer generally

to "damages," with specific reference to damage to their homes

and their health. However, nothing requires a claimant to detail

all forms of loss in a complaint to avoid dismissal based on a

lack of subject-matter jurisdiction. Therefore, considering the

allegations concerning, for example, code violations, warranties,

and "damages," as well as the arguments at the hearing and in

Plaintiffs' opposition to Zurn's motion to dismiss, this court

concludes that, for jurisdictional purpose Plaintiffs have an

injury-in-fact.

C. <u>Ripeness.</u>

Castle & Cooke frames its jurisdictional challenge as one of ripeness, asserting that the only damages in issue are based on the occurrence of future injury. "Ripeness has both constitutional and prudential components." <u>Wolfson v. Brammer</u>, 616 F.3d 1045, 1058 (9th Cir. 2010) (citations omitted). By challenging whether Plaintiffs assert sufficient damages, Castle & Cooke raises constitutional considerations. <u>See</u> <u>Portman v. Cnty. of Santa Clara</u>, 995 F.2d 898, 902-03 (9th Cir. 1993) ("The constitutional component focuses on whether there is sufficient injury").

The Ninth Circuit has explained that "[t]he constitutional component of ripeness overlaps with the 'injury in fact' analysis for Article III standing." <u>Wolfson</u>, 616 F.3d at 1058 (citing <u>Thomas</u>, 220 F.3d at 1138–39, and <u>United States Parole Comm'n v. Geraghty</u>, 445 U.S. 388, 397 (1980)). "Whether framed as an issue of standing or ripeness, the inquiry is largely the same: whether the issues presented are definite and concrete, not hypothetical or abstract." <u>Id.</u> (citations omitted). For the same reasons Plaintiffs satisfy the injury-in-fact requirement for standing purposes, they satisfy the constitutional ripeness requirement.

To the extent Zurn and Castle & Cooke seek dismissal for lack of subject-matter jurisdiction, their motions are denied.

IV.    <u>ZURN'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM.</u>

Plaintiffs assert six counts against Zurn: Count VIII for product liability, Count IX for negligence, Count X for strict liability, Count XI for breach of express warranty, Count XII for breach of the implied warranty of merchantability, and Count XIII for a violation of section 480-2 of Hawaii Revised Statutes.  Zurn seeks dismissal of Counts VIII, IX, X, XII, and XIII for failure to state a claim.  (Count XI is the subject of Zurn's summary judgment motion.)  The court grants Zurn's motion as to Counts VIII, IX, and X only.

A.    <u>Legal Standard.</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party "may assert the following defense[] by motion: . . . (6) failure to state a claim upon which relief can be granted[.]"

Dismissal under Rule 12(b)(6) may be based on either (1) the lack of a cognizable legal theory, or (2) insufficient facts to support a cognizable legal theory.  <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1988) (citing <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 533-34 (9th Cir. 1984)).  To state a claim, a pleading must contain a

"short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

On a Rule 12(b)(6) motion, the court takes all allegations of material fact as true and construes them in the light most favorable to the nonmoving party. Marcus v. Holder, 574 F.3d 1182, 1184 (9th Cir. 2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 554). Whether a complaint states a plausible claim for relief is "context-specific," and such a determination "requires the reviewing court to draw on its judicial experience and common sense." Id. (citing Twombly, 550 U.S. at 555).

B.    Counts VIII, XI, and X.

Counts VIII (product liability), IX (negligence), and X (strict liability) sound in tort.  Zurn argues that, because Plaintiffs allege no injury other than to the PEX systems and the yellow brass fittings themselves, the economic loss rule bars their tort claims.  The court agrees.

The economic loss rule, when it applies, precludes a plaintiff from recovering in tort for purely economic losses that stem from injury only to the product itself.  Ass'n of Apartment Owners of Newtown Meadows v. Venture 15, Inc., 115 Haw. 232, 285, 167 P.3d 225, 278 (Haw. 2007) ("Newtown Meadows"); City Exp., Inc. v. Express Partners, 87 Haw. 466, 469, 959 P.2d 836, 839 (Haw. 1998).  The United States Supreme Court explains, "Damage to a product itself is most naturally understood as a warranty claim.  Such damage means simply that the product has not met the customer's expectations, or, in other words, that the customer has received 'insufficient product value.'"  East River S.S. Corp v. Transamerica Delaval, Inc., 476 U.S. 858, 872 (1986) (citation omitted) (quoted in State v. U.S. Steel Corp., 82 Haw. 32, 40, 919 P.2d 294, 302 (Haw. 1996)).

Broadly speaking, the economic loss rule is designed to maintain a distinction between damage remedies for breach of contract and for tort.  The Hawaii Supreme Court has discussed

19

the economic loss rule in the context of construction defect
cases:

> The crux of [the economic loss rule] is the
> premise that economic interests are
> protected, if at all, by contract principles,
> rather than tort principles. Contract law is
> designed to enforce the expectancy interests
> created by agreement between the parties and
> seeks to enforce standards of quality. This
> standard of quality must be defined by
> reference to that which the parties have
> agreed upon. In contrast, tort law is
> designed to secure the protection of all
> citizens from the danger of physical harm to
> their persons or to their property and seeks
> to enforce standards of conduct. These
> standards are imposed by society, without
> regard to any agreement. Tort law has not
> traditionally protected strictly economic
> interests related to product quality--in
> other words, courts have generally refused to
> create a duty in tort to prevent such
> economic losses.

Id. at 291, 167 P.3d at 284 (quoting Calloway v. City of Reno,

116 Nev. 250, 993 P.2d 1259 (Nev. 2000), overruled on other

grounds by Olson v. Richard, 120 Nev. 240, 89 P.3d 31 (Nev.

2004)). The economic loss rules applies even when, as here, the

plaintiff and the defendant are not in privity of contract. Id.

("[W]e agree with those jurisdictions that bar economic recovery

in negligence where there was no privity of contract between the

plaintiff and the defendant when allowing such recovery would

blur the distinction between contract and tort law.").

The Hawaii Supreme Court has defined economic loss

damages as "those that pertain solely to the costs related to the

operation and value of the building itself." Id. at 286, 167
P.3d at 279. "Excluded are costs for personal injuries caused by
the defective design or damage to property other than the
building itself." Id.

Newtown Meadows involved a claim by an association of
apartment owners ("AOAO") that sought to recover damages from,
among other defendants, a masonry subcontractor that had
installed allegedly defective concrete slabs for Newtown Meadows,
a residential townhouse condominium. Id. at 238-39, 167 P.3d at
231-32. The AOAO alleged that, partly as a result of the
defective slabs, the buildings and foundations at Newtown Meadows
had shifted, settled, and cracked. Id. Among the AOAO's claims
were claims based on breach of express and implied warranties,
negligence, and strict product liability. Id. at 232, 167 P.3d
at 239. The Hawaii Supreme Court read the AOAO's negligence
claims as based on the subcontractors' alleged violations of
contract specifications and the Uniform Building Code. Id. at
292, 167 P.3d at 285.

The AOAO argued that the defective concrete slabs
damaged more than the property itself because they allegedly
resulted in cracked floor tiles, demising walls, skewed door
jambs and windows, and damage caused by termites entering through
floor cracks. Id. at 293, 167 P.3d at 286. The Hawaii Supreme
Court held that those losses were purely economic and did not

21

constitute damage to other property.  <u>Id.</u> at 294-95, 167 P.3d at
287-88.

Unlike this case, <u>Newtown Meadows</u> involved a masonry
subcontractor that actually participated in building the homes in
issue, rather than a manufacturer that played no role in
constructing the end product.  However, courts in other
jurisdictions, some of which were cited in <u>Newtown Meadows</u>, have
applied the economic loss rule to a product manufacturer.  In
<u>Oceanside at Pine Point Condominium Owners Association v.</u>
<u>Peachtree Doors, Inc.</u>, 659 A.2d 267, 271 (Me. 1995), the economic
loss rule barred the plaintiffs' tort claims arising out of an
allegedly defective window that was manufactured, but not
installed, by the defendant.  The plaintiffs alleged that they
had sustained significant water damage around the windows in
issue.  <u>Id.</u> at 268.  The Maine Supreme Judicial Court explained:

> Whether a product has injured only itself
> may, of course, be a difficult question to
> answer. We follow the approach taken by those
> courts when considering facts analogous to
> those before us, and look to the product
> purchased by the plaintiff, as opposed to the
> product sold by the defendant, to determine
> whether a product has injured only itself.

<u>Id.</u> at 271 (citations omitted) (quoted with approval in <u>Newtown</u>
<u>Meadows</u>, 115 Haw. at 294, 167 P.3d at 287).

In <u>Casa Clara Condominium Association, Inc. v. Charley</u>
<u>Toppino and Sons</u>, 620 So. 2d 1244, 1247-48 (Fla. 1993), the
economic loss rule similarly barred negligence claims against a

22

defendant that had supplied allegedly defective concrete that was used in the plaintiffs' homes.  The plaintiffs alleged that some of the concrete contained a high content of salt, which had caused the reinforcing steel inserted in the concrete to rust, then to crack and break off.  Id. at 1245.  The Florida Supreme Court rejected the plaintiffs' argument that the individual components and items of building material, not the homes themselves, constituted the products purchased:

> The character of a loss determines the appropriate remedies, and, to determine the character of a loss, one must look to the product purchased by the plaintiff, not the product sold by the defendant.  King v. Hilton-Davis, 855 F.2d 1047 (3d Cir. 1988). Generally, house buyers have little or no interest in how or where the individual components of a house are obtained.  They are content to let the builder produce the finished product, i.e., a house.  These homeowners bought finished products-- dwellings--not the individual components of those dwellings.  They bargained for the finished products, not their various components.  The concrete became an integral part of the finished product and, thus, did not injure "other" property.

Id. at 1247-48.

In Calloway v. City of Reno, discussed in depth in Newtown Meadows, the Nevada Supreme Court disapproved its earlier dictum in a case factually similar to the present case.  That dictum had suggested that the economic loss rule did not apply to an apartment owner's negligence and strict liability claims against the manufacturer of allegedly defective fittings used in

23

the apartment building's plumbing and heating systems.  116 Nev.

at 263-64, 993 P.2d at 1267-68 (discussing Oak Grove Inv. v. Bell

& Gosett Co., 99 Nev. 616, 625, 668 P.2d 1075, 1081 (Nev. 1983)).

In Oak Grove, the fittings had allegedly caused extensive

erosion, corrosion, and leakage throughout the apartment complex.

Id.  The Calloway court, rejecting its suggestion in Oak Ridge,

held that, "when a heating and plumbing system damages the

building as a whole, the building has injured itself and only

economic losses have occurred.  We therefore disapprove of our

dictum in Oak Grove, which stated that the leaky fittings had not

caused purely economic losses."  Id. at 1268.

Given the reasoning of Newtown Meadows and the cases it

cites with approval, this court concludes that, to the extent

Plaintiffs are asserting tort claims in connection with damage to

their plumbing systems and/or homes, those tort claims are barred

by the economic loss rule.  Any claim based on product liability,

negligence, or strict liability would have to based on injury to

a person or damage to other property, such as furniture.

Plaintiffs do not sufficiently plead such injury or damage.

Although the Complaint alleges that Zurn's conduct has caused

"serious bodily injury, such as illness related to toxic mold and

metal contamination from the drinking water,"  Compl. ¶¶ 138,

147, 151, 152, Plaintiffs were forthright at the hearing on this

motion and conceded that, to date, they have not actually

suffered any physical injury.  Transcript at 28:03-13.

Questioned by the court on this very issue, Plaintiffs said that

the Complaint, which states that Zurn's conduct "has exposed"

Plaintiffs to bodily injury, was not intended to be read as

alleging that the yellow brass fittings have already caused any

physical injury.  Plaintiffs explained that "the reason we plead

that in the Complaint . . . is because we were afraid [that]

between now and the time this [case] gets resolved, . . . if

there's a leak, somebody will get hurt."  Id. at 28:5-8.

Even if future bodily injury is compensable under other

legal theories, it cannot sustain the tort claims asserted here.

Actual damages are an essential element of a negligence claim,

just as actual injury is one of the elements of a products

liability or strict liability claim.  See, e.g., Weite v.

Momohara, 124 Haw. 236, 253, 240 P.3d 899, 916 (Haw. 2010)

("Damages comprise an essential element of a negligence claim."

(citation omitted)); Cho v. State, 115 Haw. 373, 379 n.11, 168

P.3d 17, 23 n.11 (Haw. 2007) ("It is well-established that, in

order for a plaintiff to prevail on a negligence claim, the

plaintiff is required to prove all four of the necessary elements

of negligence: (1) duty; (2) breach of duty; (3) causation; and

(4) damages."); Tabieros v. Clark Equip. Co., 85 Haw. 336, 371,

944 P.2d 1279, 1314 (Haw. 1997) ("[G]enerally, a products

liability claim based on either negligence or strict liability

has three elements: (1) a duty to anticipate and design against reasonably foreseeable hazards; (2) breach of that duty; and (3) injury proximately i.e., legally caused by the breach." (citation omitted)). Thus, regardless of whether future injury suffices for jurisdictional purposes, the possibility of future physical injury does not overcome the bar of the economic loss rule.

The Supreme Court of Florida made clear the insufficiency of possibile future physical injury:

> We also disagree with the homeowners that the mere possibility that the exploding concrete will cause physical injury is sufficient reason to abrogate the economic loss rule. This argument goes completely against the principle that injury must occur before a negligence action exists. Because an injury has not occurred, its extent and the identity of injured persons is completely speculative. Thus, the degree of risk is indeterminate, with no guarantee that damages will be reasonably related to the risk of injury, and with no possibility for the producer of a product to structure its business behavior to cover that risk.

620 So. 2d at 1247.

Given Plaintiffs' clarification that they are concerned about possible future physical injury, Plaintiffs' tort claims could be read as based on a present psychic injury in the form of an existing fear of future physical injury. But Plaintiffs may not rely on fear of future physical injury to rescue Counts VIII, IX, and X, because emotional distress, even if presently existing, is not compensable based on product liability,

26

negligence, or strict liability in the absence of a diagnosed mental illness or an accompanying physical injury.  See Haw. Rev. Stat. § 663-8.9.

The court notes that plaintiffs without existing injuries or damages who have been allowed to proceed with claims arising out of defects in products are typically not proceeding on tort theories such as those in Counts VIII, IX, and X.  See, e.g., Birdsong v. Apple, Inc., 590 F.3d 955 (9th Cir. 2009) (asserting a breach of warranty claim and a violation of California's Unfair Competition Law for allegedly defective iPods); Cole v. General Motors Corp., 484 F.3d 717 (5th Cir. 2007) (asserting breach of express and implied warranty claims for allegedly defective air bags); Briehl v. General Motors Corp., 172 F.3d 623 (8th Cir. 1999) (asserting claims for fraud, breach of warranty, and violation of state consumer protection statutes for allegedly defective anti-lock braking systems); Toyota, 754 F. Supp. 2d at 1155 (asserting warranty and contract claims, as well as violations of consumer protection statutes for allegedly defective throttle systems).  Any recovery by Plaintiffs must be based on allegations other than those presently asserted in Counts VIII, IX, and X.

Nor is the court persuaded by Plaintiffs' argument that those counts fall within an exception to the economic loss rule.  In Newtown Meadows, the Hawaii Supreme Court quoted a case in

which the South Carolina Supreme Court carved out three
exceptions to the economic loss rule:

> A builder may be liable to a home buyer in
> tort despite the fact that the buyer
> suffered only "economic losses" where: (1)
> the builder has violated an applicable
> building code; (2) the builder has deviated
> from industry standards; or (3) the builder
> has constructed housing that he knows or
> should know will pose serious risks of
> physical harm.

115 Haw. at 295, 167 P.3d at 288 (quoting Kennedy v. Columbia
Lumber & Mfg. Co., 299 S.C. 335, 384 S.E.2d 730 (S.C. 1989)).
Plaintiffs claim to fall within all three exceptions, as they
allege that Zurn has violated the plumbing code, that Zurn's
fittings deviate from industry standards, and that Zurn knew its
yellow brass fitting were dangerous.  However, all three
exceptions apply expressly to builders, and Plaintiffs provide no
authority extending the exceptions to manufacturers.  Indeed, in
a later case, the South Carolina Supreme Court stated that the
exceptions are "very narrow . . . , applicable only in the
residential real estate construction context," and that they do
not apply in the product liability context.  Sapp v. Ford Motor
Co., 386 S.C. 143, 147, 149, 687 S.E.2d 47, 51 (S.C. 2009).
Although this case concerns real estate construction, Plaintiffs'
claims against Zurn relate to allegedly defective fittings.  The
court has identified nothing in Hawaii law providing that any

exception to the economic loss rule applies to Counts VIII, IX, or X.

The court dismisses Counts VIII, IX, and X on the ground that Plaintiffs fail to allege any injury cognizable under the legal theories asserted in those counts.  Plaintiffs are given leave to attempt to state cognizable claims in an amended Complaint.

C.   Count XII.

Count XII asserts that Zurn has breached the implied warranty of merchantability.  Zurn argues that Count XII is barred by the applicable statute of limitations and that Plaintiffs do not sufficiently allege an injury.  The court disagrees.

1.   Statute of Limitations.

Zurn argues that the four-year statute of limitations set forth in the Uniform Commercial Code ("UCC") controls Plaintiffs' implied warranty of merchantability claim.  Hawaii has codified the UCC in chapter 490 of Hawaii Revised Statutes.

The implied warranty of merchantability is "implied by operation of law into every sale of goods by a merchant seller." Ontai v. Straub Clinic and Hosp., Inc., 66 Haw. 137, 250, 659 P.2d 734, 744 (Haw. 1983) (citations omitted).  The warranty is codified at section 490:2-314.  Under that statute, merchantability means, among other things, "that the goods 'are

fit for the ordinary purpose for which such goods are used.'"
Id. (quoting Haw. Rev. Stat. § 490:2-314(2)(c)).  The implied
warranty of merchantability "extends to any person who may
reasonably be expected to use, consume or be affected by the
goods and who is injured by breach of the warranty."  Haw. Rev.
Stat. § 490:2-318.

        Hawaii has codified the UCC statute of limitations at
section 490:2-725.  Subsection (1) of section 490:2-725 states:
"An action for breach of any contract for sale must be commenced
within four years after the cause of action has accrued."
Subsection (2) states:  "A cause of action accrues when the
breach occurs, regardless of the aggrieved party's lack of
knowledge of the breach.  *A breach of warranty occurs when tender
of delivery is made*, except that where a warranty explicitly
extends to future performance of the goods and discovery of the
breach must await the time of such performance the cause of
action accrues when the breach is or should have been
discovered."[3]  Haw. Rev. Stat. § 490:2-725(2) (emphasis added).

─────────────────────

        [3] Plaintiffs do not argue that the exception stated in
subsection (2) to the accrual upon delivery rule for warranties
that extend to future performance applies to their implied
warranty of merchantability claim.  Such an argument might face
significant challenges.  See Standard Alliance Indus. v. Black
Clawson Co., 587 F.2d 813, 820 (6th Cir. 1978) (explaining that
most courts have held that implied warranties do not fall within
the exception for warranties extending to future performance
because "by their very nature, they never explicitly extend to
future performance." (quoted in Western Recreational Vehicles,
Inc. v. Swift Adhesives, Inc., 23 F.3d 1547, 1550 (9th Cir.

In <u>Larsen v. Pacesetter Systems, Inc.</u>, 74 Haw. 1, 11, 837 P.2d 1273, 1280 (Haw. 1992), the Hawaii Supreme Court applied the UCC statute of limitations to a plaintiff's implied warranty of merchantability claim seeking recovery for an allegedly defective pacemaker that caused personal injuries. The defendant had argued that the two-year statute of limitations for personal injury actions applied. <u>Id.</u> The Hawaii Supreme Court stated: "Given the plain language of the UCC, as well as our decision in <u>Ontai v. Straub Clinic & Hosp., Inc.</u>, 66 Haw. 237, 249-52, 659 P.2d 734, 743 (Haw. 1983) . . . , it is difficult to imagine how the UCC statute of limitations would not apply to plaintiff's implied warranty claim."[4] <u>Id.</u> The Hawaii Supreme Court distinguished the plaintiff's claim from other claims in which the two-year personal injury statute of limitations applied because those claims involved contracts for services rather than goods. <u>Id.</u> at 12, 837 P.2d at 1280.

It is not entirely clear that section 490:2-725 applies to the claims against Zurn. <u>Au v. Au</u>, 63 Haw. 210, 626 P.2d 173 (Haw. 1981), establishes that the six-year breach of contract

---

1994)); <u>Holliday v. Bell Helicopters Textron, Inc.</u>, 747 F. Supp. 1396, 1397 (D. Haw. 1990) ("By its terms, the exception for future performance does not apply to implied warranty claims.").

[4] In <u>Ontai</u>, 66 Haw. at 249-52, 659 P.2d at 743, the Hawaii Supreme Court held that, under section 490:2-318, a patient could bring an implied warranty of merchantability action as a third party beneficiary against the manufacturer of an X-ray table sold to a hospital.

statute of limitations applies to an express warranty claim because such a claim "is an action in contact." Id. Au was not governed by the UCC because it did not involve the sale of a good. Au involved an express warranty that a home did not have water leakage. Id. at 212, 626 P.2d at 176. The home did, in fact, have leakage, which later caused damage to the home. Id. The seller argued that the two-year statute of limitations pertaining to property damage applied, while the purchaser argued that the six-year statute of limitations for breach of contract applied. Id. at 218, 626 P.2d at 180. Concluding that a warranty results from a contractual relationship, the Hawaii Supreme Court applied the six-year statute of limitations. Id. at 219, 626 P.2d at 180.

Section 490-2 in Hawaii Revised Statutes expressly applies to transactions in goods. Haw. Rev. Stat. § 490:2-102 ("Unless the context otherwise requires, this article applies to transactions in goods"). A good is defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action." Haw. Rev. Stat. § 490:2-105. In addition, section 490:10-103.1 states, "If any other provision of law is inconsistent with this chapter, this chapter shall

govern unless this chapter or such inconsistent provision of law specifically provides otherwise."

The parties do not discuss whether Zurn's fittings were "movable at the time of identification to the contract for sale." If fittings were already installed when John Pupuhi Baker and Diane T. Baker signed their purchase contract, for example, the fittings might not qualify as "goods." Plaintiffs notably do not argue that Zurn's yellow brass fittings are not goods.

John Pupuhi Baker and Diane T. Baker's home was completed in 2006. The Complaint does not say exactly when Branden H. Baker and Kim Salva Cruz Baker's home was completed, but it appears to have been around 2004. The allegations in the Complaint thus suggest that all fittings were delivered in or before 2006. If the four-year UCC statute of limitations applies, this action had to have been filed in 2010. According to Zurn, because this action was not filed until 2011, Plaintiffs' claims are time-barred.

Plaintiffs argue that any statute of limitations should be equitably tolled because Zurn "lulled" Plaintiffs into inaction by "continuing to manufacture, market, and sell defective Yellow Brass Fittings, including those used in Mililani Mauka homes, without any warning of the defects and in fact warranting the fittings through their marketing as complying with applicable standards." Pls.' Opposition to Defs. Zurn

Industries, LLC and Zurn PEX, Inc.'s Motion to Dismiss First Am.
Compl., or in the Alternative, Motion for a More Definite
Statement and Motion for Summ. J. 20, Jan. 23, 2012, ECF No. 34.
Zurn responds by noting that Plaintiffs fail to plead facts
indicating any lulling.

A statute of limitations may be equitably tolled based
on "lulling" when "'it appears that [a defendant] has done
anything that would tend to lull the plaintiff into inaction, and
thereby permit the limitation prescribed by the statute to run
against him.'" Windward Aviation, Inc. v. Rolls-Royce Corp.,
Civ. No. 10-00542 ACK-BMK, 2011 WL 2670180, at *12 (D. Haw. July
6, 2011) (quoting Mauian Hotel, Inc. v. Maui Pineapple Co.,
52 Haw. 582, 570-71, 481 P.2d 310, 315 (Haw. 1971) (citation
omitted), and citing Cunha v. Ward Foods, Inc., 501 F. Supp. 830,
836 (D. Haw. 1980)). Plaintiffs point to the allegations in the
Complaint that Zurn failed to warn them that the yellow brass
fittings were defective and that Zurn continued business as usual
in selling the fittings.

In relying on allegations in the Complaint in the
context of the lulling issue, the parties have gotten off-track.
A statute of limitations is an affirmative defense. That is, a
defendant has the burden of proving the defense. See Fed. R.
Civ. Pro. 8(c); Jones v. Bock, 549 U.S. 199, 214-15 (2007)
(noting in the course of examining the requirement that prisoners

exhaust administrative remedies before filing suit that, even
though "the complaint is subject to dismissal for failure to
state a claim" because the "allegations . . . show that relief is
barred by the applicable statute of limitations, . . . that does
not make the statute of limitations any less an affirmative
defense").  For a claim to be dismissed on a Rule 12(b)(6) motion
on limitations grounds, the running of the statute must be
apparent on the face of the complaint.  <u>Von Saher v. Norton Simon
Museum of Art at Pasadena</u>, 592 F.3d 954, 969 (9th Cir. 2010)
(citations omitted).  Zurn does not show that the running of the
statute of limitations is apparent on the face of the Complaint.
Quite apart from Plaintiffs' tolling argument, Plaintiffs are not
required to plead facts supporting any tolling argument.
Imposing such a pleading requirement would require claimants to
anticipate and respond to affirmative defenses before they are
even raised, negating the defendant's obligation to assert
affirmative defenses if they are not to be deemed waived.  On the
present record, Zurn cannot be said to establish its affirmative
defense.

> 2.   <u>Injury.</u>

Zurn argues that, even if not time-barred, Plaintiffs
do not properly allege a breach of the implied warranty of
merchantability because they do not allege injury.  According to
Zurn, Plaintiffs' allegation that the yellow brass fittings might

fail sometime in the future, not that they have already failed, is insufficient to sustain an implied warranty claim. Zurn argues that Plaintiffs cannot establish the requisite causal connection between the allegedly defective fittings and some injury, see Larson v. Pacesetter Sys., Inc., 74 Haw. 1, 837 P.2d 1273 (Haw. 1992), because Plaintiffs have suffered no cognizable injury.

The court disagrees. Plaintiffs allege that the fittings have already begun to corrode and that zinc has leached into their water systems. They also allege that the fittings violate the Honolulu Plumbing Code. Regardless of the impact of the economic loss rule on Plaintiffs' tort claims, Zurn provides no authority establishing that damage to the product itself cannot constitute "injury" for the purpose of a breach of the implied warranty of merchantability.

Other courts, including one considering a Zurn product, have permitted plaintiffs to pursue breach of warranty claims before allegedly defective products malfunction, so long as products contain inherent defects. See In re Zurn Pex Plumbing Products Litigation ("Zurn Pex"), 644 F.3d 604, 615 (8th Cir. 2011); Hicks v. Kaufman and Broad Home Corp., 107 Cal. Rptr. 2d. 761, 767 (Cal. Ct. App. 2001) ("[W]e conclude proof of breach of warranty does not require proof the product has malfunctioned but only that it contains an inherent defect which is substantially

certain to result in malfunction during the useful life of the product."); but see Briehl v. General Motors Corp., 172 F.3d 623 (8th Cir. 1999) (dismissing under Rule 12(b)(6) the plaintiffs' warranty claims, among others, on the ground that the plaintiffs failed to plead damages when the plaintiffs alleged that their cars were designed with a defective brake system, but the brakes had not malfunctioned or failed).

The Eighth Circuit's Zurn Pex decision, involving brass fittings manufactured by Zurn, is particularly instructive. Zurn Pex, a putative class action against Zurn Pex, Inc., and Zurn Industries, Inc., involved allegations that Zurn's brass fittings installed in homes as part of the PEX piping system were inherently defective because they were susceptible to stress corrosion cracking. 644 F.3d at 608-09. The plaintiffs alleged that the stress corrosion cracking would lead to leaks, but the plumbing systems in some of the homes had not actually leaked. Id. The plaintiffs asserted consumer protection, warranty, and negligence claims. Id. at 608.

Addressing a motion for class certification, the United States District Court for the District of Minnesota certified as a class all of the homeowners asserting warranty claims, regardless of whether their homes actually had leaks. Id. at 611. With respect to the negligence claims, the district

court certified as a class only those homeowners whose pipes had already leaked and caused damage to their property.  <u>Id.</u>

On appeal, Zurn argued that the certification of the warranty class was improper because the class members whose pipes had not leaked had no standing.  <u>Id.</u> at 616.  In the course of addressing the standing issue, the Eighth Circuit, examining the sufficiency of the pleadings, said, "In asserting a warranty claim, it 'is not enough' for a plaintiff 'to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that their product actually exhibited the alleged defect.'"  <u>Id.</u> (quoting <u>O'Neil v. Simplicity, Inc.</u>, 574 F.3d 501, 503 (8th Cir. 2009)).

The Eighth Circuit distinguished the plaintiffs in <u>Zurn Pex</u> from plaintiffs found to have no cognizable injury in cases such as <u>O'Neil v. Simplicity, Inc.</u>, 574 F.3d at 501.  In <u>O'Neil</u>, according to the Eighth Circuit, crib owners failed to state cognizable warranty claims because they had not alleged that their cribs actually exhibited a dangerous defect.  <u>Id.</u> at 616 (citing <u>O'Neil</u>, 574 F.3d at 503-04).  They alleged only that the cribs might develop a dangerous defect.  <u>Id.</u>  The plaintiffs in <u>Zurn Pex</u>, on the other hand, alleged that stress corrosion cracking was already evident in their PEX systems.  <u>Id.</u> at 617.

The Eighth Circuit agreed with the district court that, "to give rise to a warranty claim a fitting must contain a defect, but . . . [the fitting] need not have already caused external damage." Id. The homeowners had thus alleged sufficient injury by alleging that Zurn's brass fittings, at the time of installation, had a defect that violated Minnesota warranty law. Id. The Eighth Circuit affirmed the district court's conclusion that the homeowners' warranty claims were cognizable under Minnesota warranty law and that they could seek damages if they succeeded in proving the existence of a universal inherent defect in breach of their warranties. Id. But see id. at 620-24 (Gruender, J., dissenting) (stating that the homeowners' fittings could not be said to exhibit the alleged defect until the pipes actually leaked).

In the present case, Plaintiffs similarly allege that the yellow brass fittings are inherently defective and that the defect will result in damage. See Compl. ¶¶ 36-39, 71-74. They also allege that the fittings violate the Honolulu Plumbing Code. At the hearing on the present motion, Plaintiffs contended that they have to remove and replace the yellow brass fittings, and that the putative class members cannot refinance or sell their homes because financial institutions will not provide mortgages for homes with code violations. Transcript at 27:10-16, 29:18 - 30:10. Plaintiffs' alleged injury can therefore be characterized

39

as the failure to receive the benefit of their bargain; that is, Plaintiffs allegedly received a defective product that prematurely corrodes and violates the Honolulu Plumbing Code. See Toyota, 754 F. Supp. at 1165 (holding that the plaintiffs pled a cognizable loss under a benefit of the bargain theory when they alleged that they contracted for safe cars but received defective vehicles subject to a dangerous condition). Plaintiffs sufficiently allege a claim for breach of an implied warranty of merchantability.

### D. Count XIII.

Count XIII asserts that Zurn violated section 480-2 of Hawaii Revised Statutes. Section 480-2(a) states, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Plaintiffs allege that Zurn "engaged in unfair and deceptive acts or practices when [it] designed, manufactured and sold Yellow Brass Fittings." Zurn argues that Plaintiffs fail to state a claim under section 480-2(a) because their claims are barred by the statute of limitations and they do not adequately allege reliance or a cognizable injury. The court disagrees.

### 1. Statute of Limitations.

Zurn argues that Plaintiffs' section 480-2 claim is barred by the four-year statute of limitations set forth in section 480-24(a):

> Any action to enforce a cause of action
> arising under this chapter shall be barred
> unless commenced within four years after the
> cause of action accrues . . . .

A claim begins to accrue when the alleged violated occurred. McDevitt v. Guenther, 522 F. Supp. 2d 1272, 1289 (D. Haw. 2007). As this action was filed on July 20, 2011, under section 480-24(a), Zurn's alleged violation must have occurred on or after July 20, 2007.

Plaintiffs allege that Zurn violated section 480-2 by, among other things, representing that its PEX systems were corrosion resistant, selling products that did not comply with industry standards, and concealing from Plaintiffs the prior failure of yellow brass fittings. Compl. ¶ 169. Plaintiffs' homes were completed in or around 2003 and 2006. Thus, Zurn says, Plaintiffs are complaining about conduct occurring before the yellow brass fittings were installed in their homes, and those claims are time-barred.

Plaintiffs, however, are not referring only to such conduct. They allege in the Complaint and argue in their opposition that Zurn fraudulently concealed the defect in its fittings. Concealment stops the running of a limitations period. See Rundgren v. Bank of New York Mellon, 777 F. Supp. 2d 1222, 1232 (D. Haw. 2011) (holding that "the statute of limitations in [Hawaii Revised Statutes] § 480-24 may be tolled for fraudulent concealment"). "The active concealment requirement for the

fraudulent concealment doctrine 'necessarily requires active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time.'" O. Thronas, Inc. v. Blake, 09-00353 DAE-LEK, 2010 WL 1371390, at *7 (D. Haw. April 7, 2010) (quoting Santa Maria v. Pacific Bell, 202 F.3d 1170, 1177 (9th Cir. 2000)). Admittedly, the Complaint only vaguely asserts that Zurn has engaged in "acts of concealment as set forth herein." Compl. ¶ 172. However, as noted in the implied warranty portion of this order, a plaintiff need not, in a Complaint, allege facts relevant to an affirmative defense. As Zurn fails to show that Count XIII is time-barred on the face of the Complaint, the court denies the portion of Zurn's Rule 12(b)(6) motion that seeks dismissal of Count XIII on timeliness grounds.

## 2. Reliance and Injury.

A deceptive act or practice under section 480-2 of Hawaii Revised Statutes is "(1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances where (3) the representation, omission, or practice is material." Courbat v. Dahana Ranch, Inc., 111 Haw. 254, 262, 141 P.3d 427, 435 (Haw. 2006) (citations omitted). "A representation, omission, or practice is considered 'material' if it involves information that is important to consumers and, hence, likely to affect their choice of, or

conduct regarding, a product." Id. (citations and quotation marks omitted). This test is "an objective one, turning on whether the act or omission is likely to mislead consumers as to information important to consumers in making a decision regarding the product or service." Id. (citations omitted).

Because section 480-2 is based on fraudulent acts, claims brought under that chapter are subject to the heightened pleading requirements under Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires that, when fraud or mistake is alleged, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted)). That is, to sufficiently identify the circumstances that constitute fraud, a plaintiff must identify such facts as the times, dates, places, or other details of the alleged fraudulent activity. Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993). A plaintiff must also explain why the alleged conduct or statements are fraudulent. In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548 n.7 (9th Cir. 1994) (en banc), superseded by statute on other grounds by 15 U.S.C. § 78u-4.

Zurn argues that Plaintiffs fail to even allege that "the 'unfair and deceptive acts or practices' they claim Zurn engaged in actually induced *any* action of their part." Defs. Zurn Industries, LLC and Zurn Pex, Inc.'s Mot. to Dismiss First Am. Compl., or in the Alternative, Mot. for a More Definite Statement and Mot. for Summ. J. at 18, Nov. 3, 2011, ECF No. 10. Zurn is unpersuasive on this point. To assert a claim under section 480-2, "actual reliance need not be established." Yokoyama v. Midland Nat. Life Ins. Co., 594 F.3d 1087 (9th Cir. 2010); see also State v. U.S. Steel Corp., 82 Haw. at 51, 919 P.2d at 313 ("[A]ctual deception need not be shown; the capacity to deceive is sufficient."). Even if reliance is required, Plaintiffs assert that they have been damaged by Zurn's violations of the Honolulu Plumbing Code and warranties. Assuming for purposes of this order that only one warranty was violated, a consumer, absent a waiver, disclaimer, or the like, is entitled to expect compliance with an applicable warranty. Plaintiffs' allegations are reasonably read as asserting that, in purchasing brand new homes, they relied on Zurn's satisfaction of its legal obligations, as Zurn's provision of products came with the express or implied assertion of such satisfaction.

Zurn also complains that the damage allegations are insufficient. Under section 480-13, a plaintiff may seek damages for a violation of chapter 480. There are three necessary

44

elements to recover under section 480-13: "(1) a violation of HRS chapter 480; (2) injury to the plaintiff's business or property resulting from such violation; and (3) proof of the amount of damages."  Hawaii Medical Ass'n v. Hawaii Medical Serv. Ass'n, Inc., 113 Haw. 77, 114, 148 P.3d 1179, 1216 (Haw. 2006) (citations omitted).  Zurn argues that Plaintiffs do not properly plead injury.  Like the argument it makes with respect to Plaintiffs' implied warranty claim, Zurn argues that the only injury Plaintiffs allege is speculative.

Plaintiffs, however, contend that they have suffered an economic injury.  This injury is sufficient.  Following the guidance of the United States Supreme Court in Reiter v. Sonotone Corp., 442 U.S. 330 (1979), the Hawaii Supreme Court, analyzing the prong of section 480-2 that addresses unfair competition, held that "it is unnecessary for plaintiffs to allege commercial or competitive injury in order for plaintiffs to have standing under [Hawaii Revised Statutes] § 480-13; it is sufficient that plaintiffs allege that injury occurred to personal property through a payment of money wrongfully induced."  Ai v. Frank Huff Agency, Ltd., 61 Haw. 607, 614, 607 P.2d 1304, 1310 (Haw. 1980), overruled on other grounds by Roberts Hawaii Sch. Bus, Inc. v. Laupahoehoe Transp. Co., Inc., 91 Haw. 224, 254, P.2d 853, 883 (Haw. 1992).

There is no reason that any greater injury must be pled under the unfair and deceptive trade practices prong of section 480-2. In <u>Reiter</u>, the United States Supreme Court stated, "A consumer whose money has been diminished . . . has been injured in his property." 442 U.S. at 339 (quotation marks and modifications omitted). <u>See also</u> <u>Rosa v. Johnston</u>, 3 Haw. App. 420, 427, 651 P.2d 1228, 1234 (Haw. Ct. App. 1982) (quoting <u>Reiter</u>, 442 U.S. at 339, and citing <u>Ai</u>, 61 Haw. at 614, 607 P.2d at 1304).

Plaintiffs argue that, because the PEX pipes are defective, they have not received the benefit of their bargain, as they bargained for homes containing systems that comply with the Honolulu Plumbing Code and that are corrosion resistant. They contend that the PEX systems must be entirely replaced. Even in light of Rule 9(b)'s heightened pleading standard, Plaintiffs therefore sufficiently plead that they paid for more than they got. <u>See</u> <u>Rosa</u>, 3 Haw. App. at 428, 651 P.2d at 1235 (Haw. Ct. App. 1982) (holding that the plaintiffs' money had been diminished for purposes of establishing injury under section 480-13 when the solar water heating system they purchased failed to provide hot water, they had not been refunded the purchase price in full, and they had sustained other losses).

In sum, Plaintiffs' tort claims against Zurn, Counts VIII, IX, and X, are dismissed, but without prejudice.

46

Plaintiffs are given leave to amend those claims. With respect to Counts XII and XIII, Zurn's motion to dismiss is denied.[2] Count XI was not in issue in the portion of Zurn's motion brought under Rule 12(b)(6).

V.      ZURN'S SUMMARY JUDGMENT MOTION.

Zurn seeks summary judgment on Count XI (breach of express warranty), and, if Count XII (breach of the implied warranty of merchantability) is not dismissed, summary judgment on that count too. The court denies the motion for summary judgment with respect to Counts XI and XII.

A.    Legal Standard.

Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden initially falls on the moving party to identify for the court "the portions of the materials on file

---

[2]  As the alternative to dismissal under Rule 12(b)(6), Zurn requests a more definite statement with respect to Counts XII and XIII, pursuant to Rule 12(e). Zurn, however, makes no arguments and cites no authority addressing Rule 12(e). Zurn has not properly briefed the court on this issue, and the court denies the request.

that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. Catrett, 477 U.S. 317, 323 (1986)); accord Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 987 (9th Cir. 2006). "A fact is material if it could affect the outcome of the suit under the governing substantive law." Miller, 454 F.3d at 987. When the nonmoving party bears the burden of proof on one or more issues at trial, the party moving for summary judgment may satisfy its burden with respect to those issues by pointing out to the court an absence of evidence from the nonmoving party. Miller, 454 F.3d at 987.

When the moving party meets its initial burden on a summary judgment motion, "[t]he burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial." Id. The court must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial. See Balint v. Carson City, Nev., 180 F.3d 1047, 1054 (9th Cir. 1999). On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." Miller, 454 F.3d at 988 (brackets omitted) (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)).

B.    There are Triable Issues of Fact on the Warranty
      Claims.

It is undisputed that Zurn's yellow brass fittings are expressly warranted for 25 years.  See Compl. ¶ 66.  Zurn argues, however, that the defect Plaintiffs are complaining about is outside the scope of their express warranties, as they provide for reimbursement only if there is a "failure or a leak" and do not cover design defects.  With respect to Plaintiffs' implied warranty claim, Zurn argues that summary judgment is warranted because the express warranty explicitly excludes any implied warranties.

Zurn submits thirty-two different warranties that it claims were issued for its products at different times.  For example, Exhibit A to the affidavit of Barbara Cass purportedly applies to all Zurn products manufactured after August 1, 1995.  Aff. of Barbara Cass ¶ 3, ECF No. 11-3.  Exhibits G and H are "examples" of Zurn's warranty as revised on or around October 15, 1996.  Id.  Zurn does not identify which warranties cover the brass fittings installed in Plaintiffs' homes.

The court agrees with Plaintiffs that Zurn does not meet its burden of showing an absence of genuine issues of material fact.  First, it is unclear which warranties, if any, apply to the yellow brass fittings in issue.  In Cartwright v. Viking Industries, Inc., 249 F.R.D. 351, 356 (E.D. Cal. 2008), the district court refused to decide that an express warranty

49

disclaimed any implied warranties when it could not determine which, if any, of the three warranties submitted by the plaintiff was applicable to the case. The court said, "Until a specific warranty is factually established as pertaining to this action, the court cannot dismiss all implied warranty claims as a matter of law." Id.

Zurn argues that it need not specify which warranties are in issue because none of the warranties covers design defects. Zurn appears to be asking this court to study thirty-two warranties, even though possibly none applies. Before the court will undertake such a task, Zurn needs to make a considerably better record as to why that is necessary. Plaintiffs say that they do not have sufficient information to determine whether any of the warranties submitted by Zurn applies to the yellow brass fittings in issue and whether any applicable warranty was in fact limited to failures, leaks, and manufacturing defects, as Zurn contends. Zurn does not meet its burden of persuasion on a summary judgment motion by simply submitting numerous warranties. Summary judgment is denied.

VI.      CASTLE & COOKE'S MOTION TO DISMISS.

Castle & Cooke seeks to dismiss Plaintiffs' claims against it under section 672E-2 of Hawaii Revised Statutes, which provides for dismissal when claimants fail to comply with chapter 672E.

A.    <u>Statutory Framework.</u>

Chapter 672E of Hawaii Revised Statutes requires a claimant alleging construction defects to serve a contractor from which it is seeking recovery with written notice of the claim at least ninety days before filing an action against that contractor.  Haw. Rev. Stat. §§ 672E-2, 672E-3.  The notice must "describe the claim in detail and include the results of any testing done."  <u>Id.</u> § 672E-3.  "After serving the notice of claim, a claimant shall give to the contractor reasonable prior notice and an opportunity to observe if any testing is done."  <u>Id.</u>  A contractor may then reject the claim by serving the claimant with a written rejection or failing to respond within thirty days.  <u>Id.</u> § 672E-4(a).  Alternatively, the contractor may offer to settle, or request an inspection of the premises.  <u>Id.</u> § 672-E-4(b).

Under section 672E-13, a court must dismiss, without prejudice, an action that does not comply with chapter 672E.  However, when an "applicable statute of limitations on actions would prevent the refiling of an action,"  a court must "immediately stay[]" the action "to provide the claimant with an opportunity to comply with this chapter, but for no longer than six months."  Haw. Rev. Stat. § 672E-13(3).

B.   Castle & Cooke Does Not Establish Noncompliance
     With Chapter 672E.

There is no dispute that chapter 672E applies to this case.  Moreover, Plaintiffs concede that they did not provide Castle & Cooke with notice of their claim before filing the Complaint.  The issue here is whether Plaintiffs have since complied with the requirements of that chapter.  Obviously, having been sued, Castle & Cooke has had belated notice of Plaintiffs' claims.  But Castle & Cooke argues that Plaintiffs have not provided Castle & Cooke with the results of any testing conducted on the fittings in issue.  Castle & Cooke construes correspondence between Castle & Cooke's counsel and Plaintiffs' counsel as referring to tests of the fittings in issue.  Castle & Cooke maintains that, under section 672E-3, it is entitled to the test results.  See Agena Dec. Ex. 3 (letter from Plaintiffs' counsel to Castle & Cooke's counsel), ECF No. 33-3 ("Plaintiffs have extracted brass fittings from the PEX plumbing systems installed in Plaintiffs' homes and such fittings were examined.").  According to Plaintiffs, they created no "reports," but Castle & Cooke argues that, at the very least, it should be given any results of the examination, even if there are no reports.  Id.

At the hearing on this motion, Plaintiffs maintained that they do not have reports, results, or other information to turn over or to describe, as no tests were performed in this

case. They apparently determined that the fittings in their homes are defective based on testing done on Zurn's yellow brass fittings in a different case. In response to questions posed by the court, Plaintiffs said that they would turn over the results of those tests, provided they were not subject to a confidentiality agreement.

The court has received no supplemental information from either party about whether any test results from another case have been turned over or whether those materials are subject to a confidentiality agreement. The record at this point does not establish noncompliance with the requirement in chapter 672E to provide such information. The court therefore denies the motion to dismiss.

However, within two weeks of the date of this order, Plaintiffs must either file a certificate of compliance with section 672E-3(c), or file an explanation as to why they have not yet complied, given that it has been nearly two months since the date of the hearing. If Plaintiffs do not meet this deadline, the court will vacate the denial of Castle & Cooke's motion and either grant it or stay the claims against Castle & Cooke if the applicable statute of limitations might bar the refiling of the Complaint by any affected homeowner.

If Plaintiffs comply with this order but Castle & Cooke still asserts a violation of chapter 672E, Castle & Cooke must

submit a written statement of its position no later than two weeks from the filing of Plaintiffs' certificate of compliance or explanation. The court will then review the submissions and indicate any further action to be taken. Each party is limited to 1000 words.

VII.     <u>CONCLUSION.</u>

Zurn's motion to dismiss is granted as to Count VIII, Count IX, and Count X. Zurn's motion to dismiss is denied with respect to Plaintiffs' other claims. Zurn's request for a more definite statement and its summary judgment motion are denied. Plaintiffs are given leave to file an amended Complaint no later than May 21, 2012.

The court denies Castle & Cooke's motion, but directs Plaintiffs to file, within two weeks, either a certificate of compliance with section 672E-3(c), or an explanation as to why they have not complied. Castle & Cooke may submit a response within two weeks of Plaintiffs' submission. Each party's submission is limited to 1000 words.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 25, 2012.



 /s/ Susan Oki Mollway 
Susan Oki Mollway
Chief United States District Judge

Baker et al. v. Castle & Cooke Homes Hawaii, Inc. et al.; Civil No. 11-00616 SOM-RLP;
ORDER (1) GRANTING IN PART DEFENDANT ZURN INDUSTRIES, LLC, AND ZURN PEX, INC.S' MOTION
TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT, OR, IN THE ALTERNATIVE, MOTION FOR
A MORE DEFINITE STATEMENT, AND DENYING DEFENDANT ZURN INDUSTRIES, LLC, AND ZURN PEX,
INC.S' MOTION FOR SUMMARY JUDGMENT, AND (2) DENYING CASTLE & COOKE'S MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT AND DIRECTING PLAINTIFFS TO SUBMIT MATERIALS.