IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JOHN PUPUHI BAKER, JR., ET AL., | ) ) ) | CIVIL NO. 11-00616 SOM-RLP |
| Plaintiffs, | ) ) ) | FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFF'S MOTION FOR |
| vs. | ) ) | CLASS CERTIFICATION |
| CASTLE & COOKE HOMES HAWAII, INC., ET AL., | ) ) ) | |
| Defendants. | ) ) | |
| | ) | |

FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION[1]

Before the Court is Plaintiffs' Motion for Class Certification, filed on November 4, 2013 ("Motion"). See ECF No. 114. On November 5, 2013, the Court found this matter suitable for disposition without a hearing pursuant to Local Rule 7.2(d) and set a briefing schedule in accordance with the parties' stipulation. See ECF Nos. 115, 116. On December 12, 2013, Defendant Castle & Cooke Homes Hawaii, Inc. ("C&C")

---

[1] Within fourteen (14) days after a party is served with a copy of the Findings and Recommendation, that party may, pursuant to 28 U.S.C. § 636(b)(1)(B), file written objections in the United States District Court. A party must file any objections within the fourteen-day period allowed if that party wants to have appellate review of the Findings and Recommendation. If no objections are filed, no appellate review will be allowed.

filed its memorandum in opposition to the Motion, and on December 26, 2013, Plaintiffs filed their reply.[2]  See ECF Nos. 117, 122.  Based on the following, and after careful consideration of the Motion, the supporting and opposing memoranda, declarations, and exhibits attached thereto, and the record established in this action, the Court HEREBY FINDS AND RECOMMENDS that the Motion be GRANTED IN PART AND DENIED IN PART.

BACKGROUND

**A.   Factual Background**

Mililani Mauka is a large planned residential community composed of single- and multi-family homes in central Oahu, Hawaii.  Pearson Decl. ¶ 4.  C&C was the developer and general contractor for all of the homes in Mililani Mauka.  Id.  Construction and development of Mililani Mauka began around 1990 and was completed in 2008.  Id. Mililani Mauka was built in increments known as "Units," which consisted of varying numbers and types of individual homes. Id.  Altogether, there were dozens of Units, comprising

---

[2]  Plaintiffs' Motion and reply appear to use typewriting that is smaller than that allowed by Local Rule 10.2(a). Plaintiffs are cautioned that failure to follow the form requirements under the Local Rules may result in matter being stricken.  See LR 10.2(a) ("If the court determines that a matter does not comply with this rule, the matter may be stricken by motion or sua sponte.").

approximately 6,000 homes, built during Mililani Mauka's 18-year history.  Id.

Plaintiffs are the owners of two homes in Mililani Mauka.  Plaintiffs John Pupuhi Baker, Jr. and Diane T. Baker purchased their home, located at 95-872 Ukuwai Street, from C&C on December 16, 2005, and construction was completed around March 2006.  First Am. Compl. ("FAC"), ECF No. 7, at ¶ 3; Barrett Decl. Ex. 13.  Plaintiffs Branden H. Baker and Kim Salva Cruz Baker purchased their home, located at 95-1023 Halepahu Street, from C&C on December 20, 2003, and construction was completed shortly thereafter.  FAC ¶ 5; Barrett Decl. Ex. 12.

Plaintiffs' homes were built using pipes made of flexible plastic called cross-linked polyethylene ("PEX").  FAC ¶ 22.  The PEX pipes are joined together by a fitting made of "yellow brass."  Id. ¶¶ 23, 37.  Plaintiffs allege that yellow brass is particularly susceptible to dezincification, a corrosion process by which zinc leaches into potable water that comes into contact with the brass.  Id. ¶ 36.  According to Plaintiffs, as the brass corrodes, it becomes porous and mechanically weak.  Id.  Plaintiffs further allege that the PEX systems in the putative class members' homes have begun to, or are about to, leak water into the walls, ceilings, and

floors of their homes.  Id. ¶¶ 72, 76.  Plaintiffs allege that the leakage will cause water damage, water contamination, and mold growth in their homes, exposing the occupants to toxins. Id. ¶ 76.  In order to prevent this damage, Plaintiffs allege that the PEX systems will need to be replaced and the homes will need to be repiped.  Id. ¶ 77.

According to Plaintiffs, C&C's use of PEX piping prior to 2000 and specific yellow brass fittings, such as those governed by the ASTM F1807 standard, were in violation of the Honolulu Plumbing Code ("HPC").[3]  Id. ¶¶ 30-32, 34-35. In addition, Plaintiffs allege that, prior to April 2006, C&C discovered that certain yellow brass fittings in Mililani Mauka were experiencing corrosion.  Id. ¶ 79.  Despite this knowledge, C&C allegedly failed to inform subsequent buyers and continued to install PEX systems that included these brass fittings in Mililani Mauka homes after 2006.  Id. ¶ 81-82.

**B.   Procedural History**

Plaintiffs filed this putative class action in state court on July 20, 2011 against C&C and other defendants who

---

[3] "ASTM International ('ASTM'), formerly known as the American Society for Testing and Materials, is an organization that develops consensus-based standards in industries such as construction and consumer products, to facilitate uniformity and good practices for developers, builders, and contractors in the construction of new homes across the United States." FAC ¶ 25.

allegedly manufactured and/or sold the yellow brass fittings to C&C.[4]  See ECF No. 1-1.  On October 14, 2011, the case was removed to federal court.  See ECF No. 1.  Plaintiffs bring the following eight claims against C&C: breach of contract (Count I); product liability (Count II); negligence (Count III); strict liability (Count IV); breach of implied warranty of habitability (Count V); breach of warranty of merchantability (Count VI); breach of express warranty (Count VII); and unfair and deceptive trade practices ("UDAP") in violation of Hawaii Revised Statutes ("HRS") § 480-2 (Count XIII).  See generally FAC.

## LEGAL STANDARD

A plaintiff moving to certify a class has the burden of showing that the proposed class satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("FRCP").  See Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2548-49

---

[4]  The remaining defendants have been dismissed (Watts Radiant, Inc. and Watts Water Technologies, Inc.), settled with Plaintiffs (Zurn Industries, LLC and Zurn PEX, Inc.), or have not yet appeared in the case (S.H. Legitt Co., dba Marshall Brass).  See ECF Nos. 57, 92, 93.

On June 4, 2012, C&C filed a Cross-Complaint against the Zurn Defendants for indemnity and a Third-Party Complaint against various subcontractors.  See ECF Nos. 68-1, 68-2.  C&C dismissed its third-party claims on April 19, 2013.  See ECF No. 85.

(2011).  Rule 23(a) states four threshold requirements

applicable to all class actions:

>    (1)  the class is so numerous that joinder of all
>         members is impracticable;
>
>    (2)  there are questions of law or fact common to the
>         class;
>
>    (3)  the claims or defenses of the representative
>         parties are typical of the claims or defenses of
>         the class; and
>
>    (4)  the representative parties will fairly and
>         adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  These requirements are known as

numerosity, commonality, typicality, and adequacy of

representation.  Wal-Mart, 131 S. Ct. at 2550; United Steel,

Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv.

Workers Int'l Union v. ConocoPhillips Co., 593 F.3d 802, 806

(9th Cir. 2010).

Where a putative class satisfies all four

requirements of Rule 23(a), it still must meet at least one of

three additional requirements outlined in Rule 23(b) in order

to be eligible for certification.  Wal-Mart, 131 S. Ct. at

2548.  Rule 23(b)(3), under which Plaintiffs bring the instant

Motion, requires that a court find that "the questions of law

or fact common to the members of the class predominate over

any questions affecting only individual members, and that a

class action is superior to other available methods for the

6

fair and efficient adjudication of the controversy." <u>Yokoyama v. Midland Nat'l Life Ins. Co.</u>, 594 F.3d 1087, 1090 n.1 (9th Cir. 2010). These additional requirements for class certification are known as predominance and superiority. <u>Id.</u>

"Rule 23 does not set forth a mere pleading standard." <u>Wal-Mart</u>, 131 S. Ct. at 2551. Rather, a party seeking class certification must affirmatively demonstrate his compliance with the Rule -- that is, he must "'be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)." <u>Comcast Corp. v. Behrend</u>, 133 S. Ct. 1426, 1432 (2013) (quoting <u>Wal-Mart</u>, 131 S. Ct. at 2551) (emphasis in original). In addition, the party must "satisfy through evidentiary proof" at least one of the provisions of Rule 23(b). <u>Id.</u> In conducting this "rigorous analysis," it "may be necessary for the court to probe behind the pleadings." <u>Id.</u> However, although this analysis may "entail some overlap with the merits of the plaintiff's underlying claim," merits inquiries are only to be considered to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied. <u>Amgen, Inc. v. Conn. Ret. Plans & Trust Funds</u>, 133 S. Ct. 1184, 1194-95 (2013). If

a court concludes that the moving party has met its burden of proof, then the court has broad discretion to certify the class.  Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001).

ANALYSIS

Plaintiffs seek certification of a proposed class defined as: "All eligible individual and entity homeowners who own homes constructed with defective brass fittings in the housing development known as Mililani Mauka, located in the City and County of Honolulu, Island of Oahu, State of Hawai'i, and all homeowners associations whose members consist of such individual and entity homeowners."[5]  Mot. 1.

As an initial matter, the Court addresses the persuasive value of the recent certification of a similar class of homeowner plaintiffs in a case alleging similar claims against the developer of another residential community in Hawaii state court.  On September 14, 2012, in Kai v. Haseko Homes Inc., et al., Civ. No. 09-1-2834, Judge Gary W.B. Chang certified a class defined as: "All eligible individuals and entity homeowners who currently own homes constructed with

----

[5]  C.f. FAC ¶ 84 (defining proposed class as: "All individuals or entities who own homes that were designed, developed and built by the Designer, Developer and Builder Defendants that have Yellow Brass Fittings installed in them and located in Mililani Mauka.").

8

brass plumbing fittings in the development area known as the Ocean Pointe Project located in the District of Ewa, City and County of Honolulu, island of Oahu, State of Hawaii."[6]   Agena Decl. Ex. 10, at 35:20-36:2.   Judge Chang made clear, however, that his ruling was based on Rule 23 of the *Hawaii* Rules of Civil Procedure -- not FRCP 23 -- which he believes to be "more liberal than many of the federal jurisdictions when it comes to prosecuting class actions."   Agena Decl. Ex. 10, at 34:9-19.   Accordingly, the Court declines to give any weight to the Kai class certification and will analyze each of FRCP 23's requirements, under applicable federal law, below.

**A.   FRCP 23(a) Requirements**

   **1.   Numerosity**

      The numerosity requirement is satisfied when the members of the class are "so numerous that joinder of all members is impracticable."   Fed. R. Civ. P. 23(a)(1).   The numerosity inquiry "requires examination of the specific facts of each case and imposes no absolute limitations."   Gen. Tel. Co. of the Nw., Inc. v. E.E.O.C., 446 U.S. 318, 330 (1980). In general, numerosity is met when a class includes at least 40 members.   Rannis v. Recchia, 380 Fed. Appx. 646, 651 (9th

---

      [6]   Judge Chang deleted the word "defective" before brass plumbing fittings from the class definition.   Agena Decl. Ex. 10, at 35:20-36:2.

Cir. 2010); <u>Davis v. Four Seasons Hotel Ltd.</u>, 277 F.R.D. 429, 435 (D. Haw. 2011).

Here, Plaintiffs contend that numerosity is satisfied because they allege that all of the approximately 6,000 homes in Mililani Mauka contain defective brass fittings. <u>See</u> Reply 3-4 (citing FAC ¶¶ 69-74). In support of this claim, Plaintiffs provide the preliminary inspection report prepared by Plaintiffs' expert, Randy Kent of Kent Engineering, LLC, a forensic engineering and inspection consulting firm. <u>See</u> Kent Decl. Ex. 8A. As part of a "convenience survey," Mr. Kent removed the fittings from the plumbing systems of four homes: Plaintiffs' two homes, as well as two other homes within 500 feet of Plaintiffs' homes (the Obason and Ruiz homes). Kent Decl. ¶ 18; Kent Decl. Ex. 8A, at 1; Omuro Decl. Ex. 20, at 198:25-199:10. Mr. Kent concluded that "the PEX systems installed in the Mililani Mauka homes used fittings made of high zinc duplex brass," "are corroding," and "will prematurely and, ultimately, fail." Kent Decl. ¶ 21.

C&C challenges Plaintiffs' showing of numerosity because, according to C&C, "the great majority of homes in Mililani Mauka simply do not contain yellow brass fittings." Def.'s Mem. Opp. Mot. 7. C&C states that there were at least

four different types of plumbing systems used in Mililani Mauka: (1) copper piping with copper fittings; (2) CPVC pipes with CPVC plastic fittings; (3) Manabloc systems with PEX pipes and no fittings; and (4) PEX systems using brass fittings. Pearson Decl. ¶ 6. Brass fittings were only used for the fourth category, PEX systems. Id. Moreover, C&C asserts that the earliest available record indicates that PEX piping with yellow brass fittings was not used in Mililani Mauka until sometime in or after 2000. See Yasumoto Decl. Exs. 1-4. In addition, after 2000, the PEX system was used only in some Mililani Mauka homes, as C&C also continued to use the Manabloc system in several Units. Pearson Decl. ¶ 7.

Contrary to Plaintiffs' assertion that the Court must accept as true Plaintiffs' allegation that all 6,000 Mililani Mauka homes contain defective brass fittings, see Reply 3-4, "Rule 23 does not set forth a mere pleading standard." Wal-Mart, 131 S. Ct. at 2551. Nevertheless, a court may make commonsense assumptions to support a finding that joinder would be impracticable. R.P.-K. ex rel. C.K. v. Dep't of Educ., Haw., 272 F.R.D. 541, 547 (D. Haw. 2011) ("When the exact number of class members cannot be ascertained, the court may make common sense assumptions to support a finding of numerosity.") (citation omitted); 1

11

William B. Rubenstein, Newberg on Class Actions § 3:13 (5th ed. 2013) ("Generally, a plaintiff must show enough evidence of the class's size to enable the court to make commonsense assumptions regarding the number of putative class members."). In this case, even if the class were limited to homeowners of Mililani Mauka homes built with PEX systems from 2000 to 2008 (thus excluding all homes built from 1990 to 1999, as well as those homes built in 2000 or later using Manabloc systems), the result would be in all likelihood a class far exceeding 40 members.  Indeed, commonsense dictates that, at the very least, the homes in Plaintiffs' two Units, as well as the homes in the Obason and Ruiz's Unit(s), would contain PEX systems.[7]  Therefore, the Court finds that the proposed class meets the numerosity requirement.

2.  **Commonality**

A proposed class meets the commonality requirement if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Commonality requires that the class members' claims "depend on a common contention" such that "determination of its truth or falsity will resolve an issue

---

[7]  According to C&C, Plaintiffs' homes are in Units 127 and 134.  See Def.'s Mem. Opp. Mot. 4-5.  Notably, C&C has not affirmatively stated that the number of putative class members is less than 40, arguing only that Plaintiffs have failed to meet their burden to prove numerosity.  See id. at 22-23.

that is central to the validity of each claim in one stroke."
Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581, 588 (9th
Cir. 2012) (quoting Wal-Mart, 131 S. Ct. at 2551) (alterations
omitted).  Put another way, the key inquiry is not whether the
plaintiffs have raised common questions, but rather, whether
class treatment "will generate common *answers* apt to drive the
resolution of the litigation."  Abdullah v. U.S. Sec. Assocs.,
Inc., 731 F.3d 952, 957 (9th Cir. 2013) (quoting Wal-Mart, 131
S. Ct. at 2551) (emphasis in original).  "This does not,
however, mean that *every* question of law or fact must be
common to the class; all that Rule 23(a)(2) requires is "a
single *significant* question of law or fact."  Id. (quoting
Mazza, 666 F.3d at 589) (emphases in original).

In this case, a key inquiry will be whether the
class members' homes contain defective brass fittings.
Specifically, the Court will need to determine whether the
fittings comply with the HPC and whether they are prone to
premature corrosion, and if so, what liability, if any, C&C
owes to Plaintiffs.  The Court finds that these questions will
generate common answers to drive the resolution of the
litigation.  C&C's focus on the varying rates of corrosion
associated with fittings manufactured by different companies
is misplaced.  The class members' claims do not arise because

13

their fittings have corroded at the same rate, but rather because their fittings are all allegedly subject to premature corrosion in the first place.  Therefore, the Court finds that the proposed class meets the commonality requirement.

### 3.    Typicality

The typicality requirement is met if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Rodriquez, 591 F.3d at 1124 (quoting Armstrong v. Davis, 275 F.3d 849, 868 (9th Cir. 2001)).  Under the "permissive standards" of Rule 23(a)(3), the class representatives' claims need only be "reasonably co-extensive with those other class members; they need not be substantially identical." Id. (quoting Hanlon, 150 F.3d at 1020).  "The purpose of the typicality requirement is to assure that the interest of the named representative align with the interests of the class." Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992)).  See also Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 156 (1982) (typicality requires that a

class representative "possess the same interest and suffer the same injury" as the class members).

Here, all class members allege the same injuries arising from common conduct: an increased risk of leaks and flooding due to C&C's installation of defective brass fittings in their plumbing systems. Accordingly, the Court finds that the typicality requirement is satisfied.

### 4. Adequacy of Representation

The final requirement of Rule 23(a) is that Plaintiffs must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998). To determine whether representation is adequate, the Court must assess whether: (1) the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. Id. Further, whether the class representatives satisfy the adequacy of representation requirement depends on "the qualifications of counsel for the representatives, an absence of antagonism, a sharing of

15

interests between representatives and absentees, and the unlikelihood that the suit is collusive." Rodriguez v. Hayes, 591 F.3d 1105, 1125 (9th Cir. 2009) (quoting Walters v. Reno, 145 F.3d 1032, 1046 (9th Cir. 1998)).  As long as one of the named plaintiffs is an adequate representative, the adequacy requirement is satisfied.  Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 961 (9th Cir. 2009).

### a.   Plaintiffs Meet General Adequacy Requirements

Although C&C concedes that the proposed class counsel are competent to represent the proposed class in this case, C&C asserts that Plaintiffs are inadequate representatives on two grounds.  First, C&C claims that Plaintiffs cannot adequately represent the class because they are not familiar with the case, have failed to meaningfully participate in the litigation, and are relying totally on counsel.  However, "[t]he threshold of knowledge required to qualify a class representative is low." Moeller v. Taco Bell Corp., 220 F.R.D. 604, 611 (N.D. Cal. 2004).  While the class representatives must understand the gravamen of their claims, it is not necessary that they be "intimately familiar with every factual and legal issue in the case." Id.  Instead, a class representative will only be deemed inadequate if he or she is "startlingly unfamiliar" with the case.  Id.  See also

16

Surowitz v. Hilton Hotels Corp., 383 U.S. 363 (1966)
(reversing dismissal of derivative action even though
plaintiff had little knowledge of the nature of the suit or
the underlying facts).  Having reviewed Plaintiffs'
declarations and deposition transcripts, the Court finds that
Plaintiffs have demonstrated an understanding of the basic
theory of the case.  See, e.g., Branden Baker Dep., Omuro
Decl. Ex. 24, at 55:20-56:7 (stating that he has a plumbing
system that will eventually fail due to a manufacturing defect
with the fittings).  They also have shown an understanding of
their duties as class representatives and a willingness to
assist counsel in the litigation.  See, e.g., Branden Baker
Decl. ¶¶ 4-5.  Therefore, the Court concludes that Plaintiffs
and their counsel will prosecute the action vigorously on
behalf of the class.

C&C also challenges Plaintiffs' appointment as class
representatives because John Baker and Branden Baker are close
personal friends with one of Plaintiffs' counsel.  C&C points
to a potential conflict that could arise if, for example,
Plaintiffs' counsel is incentivized to settle the lawsuit
quickly to secure fees rather than continuing to pursue the
full value of the class' claims.  However, the mere potential
for a conflict of interest is not sufficient to defeat class

certification.  See Cummings v. Connell, 316 F.3d 886, 896

(9th Cir. 2003) ("[T]his circuit does not favor denial of

class certification on the basis of speculative conflicts.");

Soc. Servs. Union, Local 535, Serv. Emps. Int'l Union, AFL-CIO

v. Santa Clara Cnty., 609 F.2d 944, 948 (9th Cir. 1979) ("Mere

speculation as to conflicts that may develop at the remedy

stage is insufficient to support denial of initial class

certification.").  Because C&C has not shown that Plaintiffs'

personal relationships with counsel have manifested an actual

conflict, see In re Static Random Access Memory (SRAM)

Antitrust Litig., 264 F.R.D. 603, 609 (N.D. Cal. 2009),the

Court concludes that Plaintiffs meet general requirements to

qualify as representatives for the class.

> **b.    Plaintiffs Have Failed to Demonstrate That They Have Standing to Assert a UDAP Claim**

Notwithstanding the Court's finding that Plaintiffs

are generally adequate representatives for the proposed class,

Plaintiffs fail to satisfy Rule 23(a)(4) because they have

failed to show that they have standing to pursue their UDAP

claim.[8]  A named plaintiff must have a "personal stake in the

---

[8] Some courts articulate this issue as a "typicality" problem under Rule 23(a)(3), but many courts in the Ninth Circuit address a class representative's standing as an "adequacy" issue under Rule 23(a)(4).  See In re Stec Inc. Sec. Litig., No. 09-1304, 2012 WL 6965372, at *6 n.3 (C.D. Cal. Mar. 7, 2012).  This Court views the issue as one of

18

outcome" and be a member of the class that he or she seeks to represent for the class to be certified.  O'Shea v. Littleton, 414 U.S. 488, 493-94 (1974).  "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they have been personally injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." Lewis v. Casey, 518 U.S. 343, 357 (1996).  Thus, the Ninth Circuit explained, "A named plaintiff cannot represent a class alleging [] claims that the named plaintiff does not have standing to raise.  It is not enough that the class members share other claims in common."  Hawkins v. Comparet-Cassani, 251 F.3d 1230, 1238 (9th Cir. 2001) (citation omitted).  See also Lierboe v. State Farm Mut. Auto. Ins. Co., 350 F.3d 1018, 1022-23 (9th Cir. 2003) ("if Lierboe has no stacking claim, she cannot represent others who may have such a claim, and her bid to serve as a class representative must fail").

Plaintiffs' UDAP claim is premised on allegations that C&C: (1) continued to sell newly constructed homes even

---

"adequacy" because Plaintiffs have a conflict of interest with the absent putative class members if they do not have standing to assert a UDAP claim that may be available and advantageous to absent putative class members.

after knowing that the yellow brass fittings were defective;
(2) failed to inform buyers of new homes in Mililani Mauka
that their homes included failing PEX systems and were not
code-compliant; and (3) failed to include in the sales
contract for Mililani Mauka homes a notice to buyers pursuant
to HRS Chapter 672E.  See FAC ¶ 170.  C&C has presented
evidence that C&C's alleged knowledge of the defective
fittings is entirely based on matters occurring in late 2006,
after Plaintiffs purchased both of their homes.  See ECF No.
58-3, Exs. A & D; Omuro Decl. Exs. 16-19, No. 13.  In
addition, the sales contract for John and Diane Baker's home
included the requisite HRS Chapter 672E notice, see Barrett
Decl. Ex. 13, at 8, and the legislation did not go into effect
until after Branden and Kim Baker purchased their home.  See
Contractor Repair Act, 2004 Haw. Sess. Laws, Act 119, S.B. No.
2358, at § 7 (stating that Act takes effect on July 1, 2004).

Plaintiffs failed to dispute this evidence, stating
only that they "will establish Castle & Cooke's liability for
Count XIII at the appropriate time."  Pls.' Reply 9 n.3.  But,
despite Plaintiffs' repeated assertion that class
certification is not a merits determination, see, e.g., id. at
8-9, the Supreme Court has clearly stated that a party seeking
class certification must affirmatively demonstrate his or her

compliance with Rule 23 and be prepared to prove each requirement *in fact*.  <u>See</u> <u>Comcast Corp.</u>, 133 S. Ct. at 1432 (quoting <u>Wal-Mart</u>, 131 S. Ct. at 2551).  Indeed, merits inquiries should be considered to the extent they are relevant to determining whether Rule 23 prerequisites for class certification are satisfied.  <u>Amgen</u>, 133 S. Ct. at 1194-95. Here, Plaintiffs have failed to demonstrate that they have standing to assert a UDAP claim.  Therefore, the Court concludes that Plaintiffs are not adequate class representatives as to that claim.

**B.    FRCP 23(b)(3) Requirements**

**1.    Predominance**

The predominance inquiry of Rule 23(b)(3) asks whether "the questions of law or fact common to the class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  The predominance criterion of Rule 23(b)(3) is "far more demanding" than the commonality requirement set forth in Rule 23(a)(2).  <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 624 (1997).  Because a principal purpose of class actions is to promote efficiency and economy of litigation, the predominance analysis focuses on the relationship between the common and individual issues in the case and tests whether the proposed

class is sufficiently cohesive to warrant class treatment.

Abdullah, 731 F.3d at 963.  Predominance generally exists

"where common questions, which can be resolved for all members

on a class-wide basis, are such a significant aspect of the

case that they present 'a clear justification for handling the

dispute on a representative rather than on an individual

basis.'"  Hanlon, 150 F.3d at 1022 (internal quotation marks

and citation omitted).  "Considering whether 'questions of law

or fact common to class members predominate' begins, of

course, with the elements of the underlying cause of action."

Erica P. John Fund, Inc. v. Halliburton Co., 131 S. Ct. 2179,

2184 (2011).

Plaintiffs' remaining claims are for breach of

contract (Count I),[9] product liability (Count II),[10] negligence

_____

[9] A breach of contract claim requires the plaintiff to
identify (1) the contract at issue; (2) the parties to the
contract; (3) whether Plaintiff performed under the contract;
(4) the particular provision of the contract allegedly
violated by the defendant; (5) when and how the defendant
allegedly breached the contract; and (6) how the plaintiff was
injured.  Menashe v. Bank of N.Y., 850 F. Supp. 2d 1120, 1139
(D. Haw. 2012) (citation omitted).

[10] "Under Hawaii law, plaintiffs in design defect cases
may proceed on both a theory of negligence for negligent
design and a theory of strict liability in tort for defective
design."  Mullaney v. Hilton Hotels Corp., 634 F. Supp. 2d
1130, 1142 (D. Haw. 2009) (quoting Tabieros v. Clark Equip.
Co., 85 Hawai'i 336, 354, 944 P.2d 1279, 1297 (1997)).  In a
negligent design claim, the plaintiff must prove that "the
manufacturer was negligent in not taking reasonable measures

22

(Count III),[11] strict liability (Count IV),[12] breach of implied

warranty of habitability (Count V),[13] breach of warranty of

merchantability (Count VI),[14] and breach of express warranty

---

in designing its product to protect against a foreseeable risk of injury and the manufacturer's negligence was a legal cause of the plaintiff's injury." Id. (quoting Tabieros, 85 Hawai'i at 354, 944 P.2d at 1297). To establish a prima facie claim for strict product liability, the plaintiff must prove "(1) a defect in the product which rendered it unreasonably dangerous for its intended or reasonably foreseeable use; and (2) a causal connection between the defect and the plaintiff's injuries." Id. (quoting Acoba v. Gen. Tire, Inc., 92 Hawai'i 1, 16, 986 P.2d 288, 303 (1999)).

[11] Under a general negligence theory, the plaintiff has the burden of proving (1) the defendant had a duty to conform to a certain standard of conduct, (2) breach of that duty, (3) causal connection between the breach and the injury, and (4) damages. Cho v. State, 115 Hawai'i 373, 379 n.11, 168 P.3d 17, 23 n.11 (2007).

[12] See supra n.10.

[13] A cause of action for breach of implied warranty of habitability exists where a defect or unsafe condition is "of a nature and kind which will render the premises unsafe, or unsanitary and thus unfit for living therein." Armstrong v. Cione, 736 P.2d 440, 445 (Haw. App. 1987). "The premises must be substantially unsuitable for living so that the breach of the warranty would constitute a constructive eviction of the tenant." Id.

[14] In a breach of implied warranty of merchantability claim, the plaintiff must show "(1) the seller is a merchant of such goods, and (2) the product was defective or unfit for the ordinary purpose for which it is used." Stoebner Motors, Inc. v. Automobili Lamborghini S.P.A., 459 F. Supp. 2d 1028, 1035 (D. Haw. 2006) (quoting Nielsen v. Am. Honda Motor Co., 92 Hawai'i 180, 190, 989 P.2d 264, 274 (App. 1999)). See also Haw. Rev. Stat. § 490:2-314 (discussing implied warranty of merchantability).

(Count VII).[15]  All of these claims involve a common set of factual and legal issues which are subject to common proof, including evidence to show: C&C installed defective brass fittings in Mililani Mauka homeowners' plumbing systems; by installing these defective brass fittings, C&C breached a duty (express or implied) to homeowners; left unrepaired, the defective brass fittings will cause substantial property damage; and repairing the defective brass fittings requires the removal and replacement of all brass fittings.  While there are limited issues that might require individualized proof, such as differing warranty terms and applicable statutes of limitations, the economies of time and efficiency of litigation are better served with class treatment.  As a result, the Court finds that the predominance requirement is met.

### 2. Superiority

Rule 23(b)(3) also tests whether "a class action is superior to other available methods for the fair and efficient

---

[15] In a breach of express warranty claim, the plaintiff must prove that (1) the defendant made an affirmation of fact or promise regarding the product, (2) that statement became part of the basis of the bargain, and (3) the product failed to perform according to the statement.  Stoebner Motors, 459 F. Supp. 2d at 1035 (quoting Nielsen, 92 Hawai'i at 190-91, 989 P.2d at 274-75).  See also Haw. Rev. Stat. § 490:2-313 (discussing creation of express warranties).

adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

The rule provides a non-exhaustive list of factors for

district courts to consider in determining superiority:

> (1) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (2) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (4) the likely difficulties in managing a class action.

Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las

Vegas Sands, Inc., 244 F.3d 1152, 1163 (9th cir. 2001)

(quoting Fed. R. Civ. P. 23(b)(3)).

These factors weigh in favor of certifying the

proposed class.  First, in light of the common factual and

legal issues, Mililani Mauka homeowners have a minimal

interest in individually controlling the prosecution of this

case.  Rather, a class action is desirable because it is

unlikely that individual homeowners would be able to retain

counsel and litigate separate actions given the relatively

small amounts at stake for each owner in comparison to the

potentially high costs of discovery and experts.  Second, the

Court is not aware of any other pending case against C&C

relating to the alleged brass fitting defects at Mililani Mauka.  Third, litigation of these claims is appropriate in this forum because all of the actionable conduct occurred within this district and nearly all of the parties and witnesses are located here.  Finally, the Court does not foresee any undue difficulties in managing the instant case as a class action.  For these reasons, the Court finds that the superiority requirement is satisfied.

C.   **Case-Specific Differences Relevant to Class Certification**

   1.   **"Defective" Brass Fittings**

   Although not specifically mentioned in Rule 23, an additional prerequisite to class certification is that the class must be ascertainable.  Keegan v. Am. Honda Motor Co., 284 F.R.D. 504, 521 (C.D. Cal. 2012) (citations omitted).  A class definition should be based on objective criteria and be sufficiently precise so that class members may be identified without individualized fact finding.  Id.  See also 7A Charles Alan Wright et al., Federal Practice and Procedure § 1760 (3d 3e. 2013) (the class description must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member"); 5-23 Jerold S. Solovy et al., Moore's Federal Practice - Civil § 23.21 ("For a class to be sufficiently defined, the court must

be able to resolve the question of whether class members are
included or excluded from the class by reference to objective
criteria."). A class definition is inadequate if it depends
on a determination of the merits of the individual claims to
determine whether a particular person is a member of the
class. Id. For example, the class should not be defined in
terms of whether its members were treated "properly,"
"adequately," "reasonably," "constitutionally," or the like.
Id.

Here, C&C objects to the inclusion of the word
"defective" in the class definition to describe the brass
fittings at issue. Although Plaintiffs claim that this term
is objective because "the brass fittings installed in all
Mililani Mauka homes are defective because they do not meet
Honolulu Plumbing Code standards and are not corrosion-
resistant," see Pls.' Reply 12-13, Plaintiffs state that they
are "amenable to removing the word 'defective' from the Class
definition." Id. 13. The Court finds that the term
"defective" is a subjective term that requires an evaluation
of the merits of Plaintiffs' claims. In light of this finding
and Plaintiffs' acquiescence to removal, the Court concludes
that the word "defective" should be removed from the class
definition.

### 2.   Time Limitations and Arbitration Issues

C&C also objects to certification because of time limitations that could be applied to various class members' claims pursuant to the two-year statute of limitations and the ten-year statute of repose contained in HRS § 657-8(a). However, "the presence of individual issues of compliance with the statute of limitations . . . does not defeat the predominance of common questions." Cameron v. E. M. Adams & Co., 547 F.2d 473, 478 (9th Cir. 1976). Here, the common issues identified above are sufficient to warrant class treatment. Moreover, it is premature to limit the class to homeowners whose homes were completed before the expiration of the ten-year statute of repose. If C&C establishes that the statute of repose applies in this case through the appropriate dispositive motion, the Court would be inclined, at that point, to modify the class definition accordingly. See Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); ConocoPhillips, 593 F.3d at 809 ("a district court retains the flexibility to address problems with a certified class as they arise, including the ability to decertify").

Finally, C&C asserts that differences in the homeowners' warranties, including the potential for binding arbitration, bars class certification.  However, the possibility that C&C may attempt to enforce an arbitration agreement entered into by a portion of the members of the class does not stand in the way of class certification. Herrera v. LCS Fin. Servs. Corp., 274 F.R.D. 666, 681 (N.D. Cal. 2011); Davis v. Four Seasons Hotel Ltd., Civ. No. 08-00525 HG-BMK, 2011 WL 4590393, at *3 (D. Haw. Sept. 30, 2011).

**D.   Leave to Amend**

For the reasons stated herein, see supra Part A.4., the Court has found that Plaintiffs failed to satisfy the adequacy of representation requirement of Rule 23(a)(4) as to their UDAP claim.  Nevertheless, the Court is aware that discovery is ongoing and that class counsel could locate another putative class member who has standing as to the UDAP claim and who is willing to serve as a named class representative.  Therefore, the Court grants Plaintiffs leave to file a Second Amended Complaint to correct this deficiency within thirty (30) days of this F&R being acted upon. Subsequently, Plaintiffs may file a renewed motion for class certification as to the UDAP claim, which should address the

adequacy requirement of Rule 23(a)(4) as well as the predominance and superiority requirements of Rule 23(b)(3).

<u>CONCLUSION</u>

In accordance with the foregoing, the Court HEREBY FINDS AND RECOMMENDS that Plaintiffs' Motion for Class Certification, filed on November 4, 2013, be GRANTED IN PART AND DENIED IN PART as follows:

(1)   The Court CERTIFIES the instant case as a class action as to Plaintiffs' claims against C&C for breach of contract (Count I), product liability (Count II), negligence (Count III), strict liability (Count IV), breach of implied warranty of habitability (Count V), breach of warranty of merchantability (Count VI), and breach of express warranty (Count VII).   The Court DENIES certification as to Plaintiffs' claim against C&C under UDAP (Count XIII).

(2)   The Court CERTIFIES the following class: "All eligible individual and entity homeowners who own homes constructed with brass fittings in the housing development known as Mililani Mauka, located in the City and County of Honolulu, Island of Oahu, State of Hawai'i, and all homeowners associations whose members consist of such individual and entity homeowners."

(3)   The Court APPOINTS John Pupuhi Baker, Jr.,

Diane T. Baker, Branden H. Baker, and Kim Salva Cruz Baker as class representatives.

(4)   The Court APPOINTS Melvin Y. Agena, Esq. of the Law Offices of Melvin Y. Agena, Glenn K. Sato, Esq. of the Law Office of Glenn K. Sato, and Graham B. LippSmith, Esq. and Celene S. Chan, Esq. of Girardi | Keese as class counsel.

(5)   Plaintiffs are GRANTED leave to file an amended complaint within thirty (30) days of this F&R being acted upon.

IT IS SO FOUND AND RECOMMENDED.

DATED: HONOLULU, HAWAII, JANUARY 31, 2014.

_____
Richard L. Puglisi
United States Magistrate Judge

BAKER, ET AL. V. CASTLE & COOKE HOMES HAW., INC., ET AL.; CIVIL NO. 11-00616 SOM-RLP; FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION