IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOHN PUPUHI BAKER, JR., individually and as Trustee of the Revocable Trust of John Pupuhi Baker, Jr.; DIANE T. BAKER, individually and as Trustee of The Revocable Trust of Diane Theresa Baker; BRANDEN H. BAKER; KIM SALVA CRUZ BAKER, individually and on Behalf of a Class of All Persons Similarly Situated,<br><br>         Plaintiffs,<br><br>    vs.<br><br>CASTLE & COOKE HOMES HAWAII, INC., a Hawaii Corporation; ZURN INDUSTRIES, LLC, a Delaware Limited Liability Corporation; ZURN PEX, INC., a Delaware Corporation; S.H. LEGITT Co., a Michigan Corporation d/b/a MARSHALL BRASS; WATTS RADIANT, INC., a Delaware Corporation; WATTS WATER TECHNOLOGIES, INC., a Delaware Corporation; JOHN and JANE DOES 1-100; DOE PARTNERSHIPS 1-100; DOE CORPORATIONS 1-100; DOE GOVERNMENTAL AGENCIES 1-100; and DOE ASSOCIATIONS 1-100,<br><br>         Defendants.<br>_____ | CIVIL NO. 11-00616 SOM-RLP<br><br>ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION THAT CLASS BE CERTIFIED |

**ORDER ADOPTING MAGISTRATE JUDGE'S
RECOMMENDATION THAT CLASS BE CERTIFIED**

## I.      INTRODUCTION.

Defendant Castle & Cooke ("C&C") objects to the
Magistrate Judge's findings and recommendation ("F&R") relating
to Plaintiffs' motion for certification of a class of homeowners
in the Mililani Mauka development whose plumbing systems have
been constructed with allegedly defective brass fittings.  C&C
argues that the Magistrate Judge erred in recommending
certification because the proposed class fails to satisfy Rule 23
of the Federal Rules of Civil Procedure.  In particular, C&C
objects to the Magistrate Judge's findings that there are
questions of law or fact common to the class (the "commonality"
requirement"); that the representative parties will fairly and
adequately protect the interests of the class (the "adequacy"
requirement); that common questions predominate over questions
affecting only individual members (the "predominance"
requirement); and that a class action is superior to other
available methods for adjudicating the controversy (the
"superiority" requirement).

The court reviews de novo the portions of the F&R that
have been objected to.  While modifying the Magistrate Judge's
reasoning in part, the court adopts his findings that the
proposed class meets Rule 23's requirements.  The court also
adopts the Magistrate Judge's recommendation that the proposed

class be certified, but alters the recommended definition of the class to ensure that it includes only individuals who have allegedly been injured.

## II.     FACTUAL BACKGROUND.

C&C was the developer and general contractor for Mililani Mauka, a residential community in central Oahu.  See Declaration of Douglas E. Pearson ¶ 4, ECF No. 117-5.  Mililani Mauka was built gradually in increments known as "units," with each unit containing several homes.  Id.  The development as a whole consists of dozens of units, totaling approximately 6000 homes.  Id.

At least some of the homes in Mililani Mauka have plumbing systems that use cross-linked polyethylene ("PEX") piping with brass fittings.  Declaration of Randy Kent ¶ 21, ECF No. 114-3.  PEX is marketed as a cheaper, easier-to-install, and longer lasting alternative to traditional copper piping.  The PEX tubes are often joined together with brass fittings.  Id. ¶ 16.  Plaintiffs allege that the way in which a PEX pipe fits over the barb of a brass fitting creates a crevice in which water can accumulate and begin to corrode the fitting.  Id.  Plaintiffs assert that "high zinc duplex brass" (brass containing more than 37% zinc), made under the "UNS 360000 or UNS 37700 standards," rapidly corrodes through a "dezincification" process in which zinc leaches into water that comes into contact with the brass.

Id. ¶¶ 16-17.  Plaintiffs' expert says that use of this high zinc brass in PEX systems necessarily leads to "stress corrosion cracking" and eventually causes the pipes to leak, leading to water damage.  Id.

Plaintiffs' expert conducted a "convenience survey" of four houses in the Mililani Mauka development, extracting a total of 12 fittings.  Id. ¶ 18.  After studying these samples, he concluded that it was likely that the "PEX systems installed in Mililani Mauka homes use fittings made of high zinc duplex brass."  Id. ¶ 21.  Plaintiffs' expert did not, however, purport to be conducting "a statistically representative sampling" of the fittings used in Mililani Mauka.  Id. ¶ 18.  C&C claims that there are "at least four fundamentally different types of plumbing systems used [in the development,]" and that only one of the four requires brass fittings.  Pearson Decl. ¶ 6.  C&C does not indicate the proportion of homes in the development with brass fittings.  C&C does, however, submit declarations by Kerry M. Hara and Steven Silva--both of whom managed plumbing companies that installed some of the systems in Mililani Mauka--stating that they had not used brass fittings in the units they worked on.  See Declaration of Kerry M. Hara, ECF No. 117-2; Declaration of Steven Silva, ECF No. 117-3.

Before 2000, the Honolulu Plumbing Code (modeled on the 1994 Uniform Plumbing Code) barred the use of PEX pipes in

plumbing systems. See Declaration of Fred Volkers ¶ 15, ECF No.
114-23. In 2000, the Honolulu Plumbing Code was amended to allow
PEX pipes that "compl[ied] with [a manufacturing standard known
as] ASTM F877-93," which "requires the use of compression
fittings with a corrosion resistant insert stiffener." Id. at
17. Plaintiffs claim that the brass fittings they examined in
the four Mililani Mauka homes "used [a] non-approved fitting
system designated ASTM F1807" and therefore violated the Honolulu
Plumbing Code. Id. ¶ 19. C&C, on the other hand, contends that
some brass fittings in Mililani Mauka "are stamped compliant with
F877," and only some "are stamped compliant with F1807." Memo.
in Opp. at 14, ECF No. 117. C&C points to photographs of yellow
brass fittings that appear to have "F877" etched on them, though
it is not clear from which homes these fittings were extracted.
See ECF No. 119-2. C&C also provides the court with "project
manuals" for three homes in Mililani Mauka. See ECF Nos. 117-12,
117-13, 117-14. The project manuals appear to have been produced
by architects or engineers and to identify the materials for
various parts of homes. The project manuals all state that the
fittings used in the plumbing system were to comply with F877.
Id.

    Plaintiffs' expert claims that PEX systems have not
been made using high zinc duplex brass since 2009, after the
promulgation of a new National Sanitation Foundation standard

that requires the brass used in PEX systems to pass a corrosion resistance test. Kent Decl. ¶ 25. Plaintiffs' expert further claims that "the corrosion and premature failure of high zinc duplex brass fittings [has] been known in the plumbing industry for many decades." Id. ¶ 27.

The named Plaintiffs in this putative class action are John Pupuhi Baker, Jr., and his wife, Diane T. Baker, who live in a house on Ukuwai Street; and Branden H. Baker and his wife, Kim Salva Cruz Baker, who live in a house on Halepahu street. See First Amended Complaint ¶¶ 3-5, ECF No. 7. Both houses were among the four from which fittings were removed and inspected by Plaintiffs' expert. See Kent Depo., ECF No. 118-20. John and Diane purchased their home in 2005, while Branden and Kim purchased theirs in 2003. FAC ¶¶ 3-5. C&C claims that "[s]ince 2000 there have been at least four different forms of limited warrant[y] provided to homeowners in Mililani Mauka." Pearson Decl. ¶ 8. A one-year limited warranty was allegedly "generally used up to around 2003," but "[a]fter 2003, a completely different warranty program came into effect using two versions of a ten-year homebuilder's limited warranty." Id. ¶¶ 9-10. Of particular note, the two ten-year warranties both contain a binding arbitration clause, while the earlier one-year warranties do not.

At the hearing on the present motion, Plaintiffs'
counsel admitted that all the named Plaintiffs had binding
arbitration clauses in their warranties.

On January 31, 2014, the Magistrate Judge issued his
F&R.  ECF No. 126.  He found that the putative class met Rule
23(a)'s numerosity, commonality, typicality, and adequacy
requirements, as well as Rule 23(b)(3)'s predominance and
superiority requirements.  He therefore recommended certifying
the following class:

> All eligible individuals and entity
> homeowners who own homes constructed with
> brass fittings in the housing development
> known as a Mililani Mauka, located in the
> City and County of Honolulu, Island of Oahu,
> State of Hawai'i, and all homeowners
> associations whose members consist of such
> individual and entity homeowners.

Id. at 30.

The Magistrate Judge recommended certifying the class
for "claims against C&C for breach of contract (Count I), product
liability (Count II), negligence (Count III), strict liability
(Count IV), breach of implied warranty of habitability (Count V),
breach of warranty of merchantability (Count VI), and breach of
express warranty (Count VII)."  Id.  The Magistrate Judge,
however, recommended against certification as to Plaintiffs'
claim against C&C under Hawaii's Unfair and Deceptive Practices
Act ("UDAP") statute (Count XIII).  Id.  The Magistrate Judge
concluded that the proposed representative Plaintiffs lacked

standing to bring Count XIII because it was based on conduct by C&C that allegedly occurred in 2006, after the named Plaintiffs had bought their respective homes.  Id. at 21.

**III.     STANDARD OF REVIEW.**

This court reviews the F&R in accordance with Local Rule 74.2, which requires this court to "make a de novo determination of those portions of the report . . . to which objection is made."  L.R. 74.2.  The de novo standard requires the district court to consider a matter anew and arrive at its own independent conclusions.  See United States v. Remsing, 874 F.2d 614, 617 (9th Cir. 1989).  This court may accept, reject, or modify, in whole or in part, the F&R.  See id.

**IV.     CLASS ACTION STANDARD.**

"As the party seeking class certification, [Plaintiffs] bear[] the burden of demonstrating that [they have] met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)."  Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180 (9th Cir. 2001).  Rule 23(a) states:

> One or more members of a class may sue or be
> sued as representative parties on behalf of
> all only if:
>
> (1) the class is so numerous that joinder of
> all members is impracticable;
>
> (2) there are questions of law or fact common
> to the class;

> (3) the claims or defenses of the
> representative parties are typical of the
> claims or defenses of the class, and
>
> (4) the representative parties will fairly
> and adequately protect the interests of the
> class.

Fed. R. Civ. P. 23(a).

Plaintiffs seek to certify this class under Rule 23(b)(3), which requires that:

> the court finds that the questions of law or
> fact common to the members of the class
> predominate over any questions affecting only
> individual members, and that a class action
> is superior to other available methods for
> the fair and efficient adjudication of the
> controversy.

Fed. R. Civ. P. 23(b)(3).

"[T]he district court facing a class certification motion is required to conduct 'a rigorous analysis' to ensure that the Rule 23 requirements are satisfied." Conn. Ret. Plans & Trust Funds v. Amgen Inc., 660 F.3d 1170, 1175 (9th Cir. 2011). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule--that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) (emphasis in original). Analyzing whether Rule 23's prerequisites have been met will "frequently entail overlap with the merits of the plaintiff's underlying

claim . . . [because] class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013).

**V.      ANALYSIS.**

For the class to be certified, Plaintiffs must demonstrate compliance with Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements, as well as Rule 23(b)(3)'s predominance and superiority requirements. While C&C objects to the Magistrate Judge's F&R only with regard to commonality, adequacy, predominance, and superiority, the six requirements are sufficiently inter-related that this court reviews de novo Plaintiffs' compliance with each requirement.

**A.   Rule 23(a).**

**1.   Numerosity.**

Rule 23's numerosity requirement is satisfied when "the class is so large that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Although the absolute number of class members is not the sole determining factor, where a class is large in numbers, joinder will usually be impracticable." Jordan v. Los Angeles Cnty., 669 F.2d 1311, 1319 (9th Cir. 1982). "[G]enerally, courts will find that the numerosity requirement has been satisfied when the class compr[ises] 40 or more members and will find that it has not been satisfied when the class

comprises 21 or fewer." McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan & Trust, 268 F.R.D. 670, 674 (W.D. Wash. 2010) (internal quotation omitted) (surveying cases). However, a class may be certified even when the exact membership of the class is not immediately ascertainable, as long as Plaintiffs demonstrate that it is large enough that joinder is impracticable. See, e.g., McMillon v. Hawaii, 261 F.R.D. 536, 542 (D. Haw. 2009) ("Courts need not determine the exact size of a class in order to find numerosity satisfied.").

Defendants do not object to the Magistrate Judge's finding of numerosity. The Magistrate Judge noted that the court need not accept as true Plaintiffs' allegation that all 6000 homes in Mililani Mauka contain the allegedly defective fittings. Instead, the Magistrate Judge noted that a court "may make commonsense assumptions to support a finding that joinder would be impracticable," and that "commonsense dictates that, in the very least, the homes in Plaintiffs' two units, as well as the homes in the [units containing the other two homes sampled by Plaintiffs' expert] contain PEX systems." F&R at 12, ECF No. 126 (citing R.P.-K. ex rel. C.K. v. Dep't of Educ., Hawaii, 272 F.R.D. 541, 547 (D. Haw. 2011)). The Magistrate Judge concluded that the homes in these four units alone were likely to number over forty, and that Plaintiffs therefore satisfied Rule 23's numerosity requirement. Id.

A court should "rely on 'common sense' to forgo precise calculations and exact numbers" when a plaintiff "show[s] sufficient circumstantial evidence specific to the products, problems, parties, and geographic areas actually covered by the class definition to allow [the court] to make a factual finding." Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 596 (3d Cir. 2012). The fittings from the four homes constitute sufficient circumstantial evidence to meet the numerosity requirement. As the Magistrate Judge correctly noted, Mililani Mauka was constructed in "units," with each unit containing several homes, which suggests that multiple homes within the same unit likely had similar plumbing systems. All four homes sampled appear to be in different units, and it is likely that at least some other homes in each of those units contain similar fittings. It is very plausible, therefore, that a sufficiently numerous class exists even on the basis of just the four units in which fixtures were tested.

Moreover, nothing in the record suggests that these sampled units are in some way anomalous--if *all* four units tested contain some homes with PEX systems, it stands to reason that there will be at least some other units in the dozens in Miliani Mauka that also have PEX systems. C&C produces no evidence to contradict such a conclusion. At most, C&C suggests that not all homes within the development utilize PEX systems. But even if

12

only 1 in 150 homes contained such systems, the class would be sufficiently numerous to be certified. C&C neither argues that Plaintiffs have cherry-picked their examples nor provides statistical evidence suggesting that large numbers of units contain no PEX systems. Overall, therefore, the record indicates that there are at least 40 potential class members, and very likely many more. While the exact number of homeowners within the class cannot be determined at this stage, there is sufficient evidence that the class is so numerous that joinder is impracticable.

### 2. Commonality.

"Commonality exists where class members' situations share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief." Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1172 (9th Cir. 2010). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). Not "every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single significant question of law or fact." Abdullah v. U.S. Sec. Associates, Inc., 731 F.3d 952, 957 (9th Cir. 2013) (internal quotation omitted).

Plaintiffs' claims meet the commonality requirement, because they "depend upon a common contention . . . [that is] of such a nature that it is capable of classwide resolution." Dukes, 131 S. Ct. at 2551. That common contention is that high zinc duplex brass fittings are defective products. All the proposed class-members have such fittings, and, if those fittings are defective, every class-member will have been injured by C&C's conduct. Finding that high zinc fittings are defective is, therefore, a "common *answer*[] apt to drive the resolution of th[is] litigation." Id. (emphasis in original). All of Plaintiffs' claims depend on the resolution of this threshold question, and it alone is sufficient to meet the commonality requirement as to all claims asserted.

### a. Corrosion at Different Rates.

C&C argues that there cannot be sufficient commonality because the potential classmembers' fittings may be corroding at different rates. C&C contends that "Plaintiffs' central claim is that the brass fittings . . . corrode prematurely," and that whether corrosion is premature is "entirely determined by the rate of corrosion." Defendant's Objection to F&R at 5, ECF No. 127. In essence, C&C argues that class members have not suffered the same injury. See Dukes, 131 S. Ct. at 2551. ("Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury.")(internal quotation omitted).

14

However, if C&C installed a product in Plaintiffs'
homes that is defective--for example, a product that fails to
comply with governing professional standards, state law, or
warranties provided to homeowners--then the particular rate of
corrosion in different homes does not necessarily affect C&C's
liability. Even if a defective fitting has not yet corroded, C&C
might still be liable for the misconduct of placing a defective
product in a home. See Wolin, 617 F.3d at 1173 ("[P]roof of the
manifestation of a defect is not a prerequisite to class
certification.").

The central common question is not whether particular
fittings are in fact corroding prematurely, but whether C&C had
fittings installed that *tend to corrode prematurely*. Answering
this common question will be valuable to resolving all class
members' claims, even if some of them do not manifest injury.[1]
Of course, if it is determined at trial that the brass fittings
do not corrode prematurely, then it follows that C&C has not
installed a defective product, and C&C will prevail on the
merits. But the plaintiffs in a product liability suit are not

_____

[1] Certain claims could conceivably fail if Plaintiffs are
ultimately unable to demonstrate the manifestation of the defect.
For example, certain class members might arguably not be entitled
to recover for breach of the implied warranty of habitability if
their homes are presently habitable. See Armstrong v. Cione, 6
Haw. App. 652, 659, 736 P.2d 440 (1987) (noting that "breach of
the warranty [must] constitute a constructive eviction of the
tenant").

required to show that they are suffering identical harm at an identical rate for their claims to be common.  If that were so, classes in product liability suits could rarely be certified.

### b.    Homes Without Defects.

C&C next argues that the potential class members' claims are not common because "a substantial majority of the homes in Mililani Mauka . . . do not use the allegedly defective brass fittings."  Defendant's Objection at 8, ECF No. 127.  That would be a problem if the proposed class included *all* homeowners in the Mililani Mauka development, irrespective of whether they have the allegedly defective fittings or not.  However, that is not the class definition at issue.  Instead, the class that the Magistrate Judge recommends be certified includes only those homeowners with "brass fittings" in their home.  To ensure that the boundaries of the class are drawn even more precisely, this court further limits the class to only those Mililani Mauka homeowners who have "brass fittings made from UNS C36000 or UNS C37700 brasses."

At the hearing on the present motion, the court asked the parties to agree on a class definition that would be neither over- nor under-inclusive if the court were to certify the class. The court adopts the parties' proposed class definition for the purposes of deciding whether Rule 23's pre-requisites are met. Without waiving any objection to class certification, Defendants

agree that a definition limiting the class to individuals with
"brass fittings made from UNS C36000 or UNS C37700" would be
preferable to a class definition that defines the class as
including all those with "brass fittings" or one that specifies a
particular level of zinc.

This more detailed class definition ensures that all
the members of the class have suffered the same alleged injury,
and all have Article III standing to bring a claim against C&C.
See Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581, 594 (9th
Cir. 2012) ("No class may be certified that contains members
lacking Article III standing.") (quoting Denney v. Deutsche Bank
AG, 443 F.3d 253, 264 (2d Cir. 2006)).  Individuals without brass
fittings made from UNS C36000 or UNS C37700 are simply not within
the class, and therefore do not affect the commonality and
predominance inquiries.

The present record does not identify everyone within
the class.  Plaintiffs contend that UNS C36000 or UNS C37700
brasses are used in all 6000 homes in Mililani Mauka.  This court
is not required to assume this to be so, and C&C provides
significant evidence suggesting that it is not.  See, e.g., Hara
Decl. ¶ 7, ECF No. 117-2; Silva Decl. ¶ 11, ECF No. 117-3.

But this is an ascertainability issue, not a
commonality issue.  In other words, C&C's argument is not that
those within the class do not suffer common injury, but that

there is no way of knowing *who* has suffered common injury and therefore who is within the class. While the Ninth Circuit has not spoken explicitly on the issue, C&C points out that "[b]efore a class may be certified, it is axiomatic that such a class must be ascertainable." <u>Vandervort v. Balboa Capital Corp.</u>, 287 F.R.D. 554, 557 (C.D. Cal. 2012). <u>See also</u> <u>Williams v. Oberon Media, Inc.</u>, 468 Fed. Appx. 768, 770 (9th Cir. 2012) (affirming denial of class certification for lack of ascertainability); <u>accord</u> <u>Carrera v. Bayer Corp.</u>, 727 F.3d 300, 306 (3d Cir. 2013) ("Class ascertainability is an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3).") (internal quotation omitted). However, "ascertaining [the] actual identities [of all class members] is not required" at the class certification stage. <u>Knutson v. Schwan's Home Serv., Inc.</u>, 2013 WL 3746118, at *5 (S.D. Cal. July 15, 2013). The key factor is that the identities be ascertain*able* at some point in the litigation. In other words, "the proposed class definition [must be] definite enough for the court to [eventually] determine whether someone is a member of the class." <u>Id.</u>

Defining the class as including homeowners in Mililani Mauka with brass fittings made from UNS C36000 or UNS C37700 brasses in their homes allows a determination at some later point as to who is and is not a member of the class. As Plaintiffs' counsel suggested at the hearing on the present motion, there are

18

numerous methods for identifying who does and does not have high zinc duplex brass fittings.  For many of the homes, there will be purchase reports noting the types of materials used in construction.  For homes for which such records do not exist, a certain number of fittings can be visually examined to see if they are marked ASTM F1807, or otherwise reveal themselves to made from UNS C36000 or UNS C37700 brass.  Appropriate statistical techniques could be used to make inferences about the remaining homes, after a certain number of homes in a unit have been sampled.

Counsel for C&C suggested at the hearing on the present motion (though not in briefing) that Plaintiffs are required to articulate a more precise methodology for ascertaining class size, in light of the Supreme Court's recent decision in Comcast. Comcast involved the issue of whether a class may be certified even if the plaintiffs are unable to show that "[q]uestions of individual damage calculations will [not] overwhelm questions common to the class."  Id. at 1433.  The plaintiffs in Comcast asserted four theories of antitrust injury.  The district court accepted one of the theories––the "overbuilder" theory––as capable of classwide resolution, but rejected the rest.  The plaintiffs' methodology for calculating damages involved an aggregate damage value for all four theories; the plaintiffs could not isolate the damages relating solely to the

"overbuilder" theory.  The Supreme Court concluded that damages in the case were not "capable of measurement on a classwide basis," and that the proposed class therefore did not meet the predominance requirement.  Id. at 1433.  While the ascertainability inquiry is not congruent with that for predominance, C&C appears to be implying that the analyses are analogous.  That is, C&C appears to be arguing that a class may not be certified unless Plaintiffs provide a precise methodology regarding how to eventually ascertain future class members.

Even if this court read Comcast that expansively, C&C's argument would be unavailing.  In Comcast, the plaintiffs could not "possibly establish that damages [were] susceptible of measurement across the entire class."  Id.  Because damage calculations in antitrust cases are entirely dependent on expert evidence, and because the relevant expert evidence was fatally flawed, there was nothing in Comcast to suggest that damages could *ever* be calculated on a classwide basis.  Even if classwide liability could have been established, the plaintiffs presented nothing indicating that the case would not devolve into "labyrinthine individual [damage] calculations."  Id. at 1434.  Here, however, Plaintiffs have made numerous suggestions regarding how to ascertain the identities of class members.  As stated above, purchase reports, physical inspection, and sampling all provide potential ways of ascertaining class members.  At

worst, certain methods such as chemical testing might turn out to be prohibitively expensive. But the parties might stipulate to simpler proxies for class membership. They might, for example, agree that every home that has a fitting stamped "ASTM F1807" is presumptively within the class, or that once a certain percentage of a unit has been shown to have high zinc fittings, the rest of the homes in the unit may be assumed to have the same fittings.

C&C contends only that ascertaining membership will be difficult, not impossible. That is a crucial distinguishing feature from Comcast, in which the plaintiffs made no showing that it was even possible to establish classwide damages.

Moreover, as the dissenting opinion in Comcast points out, that case was an "oddity . . . [because] the need to prove damages on a classwide basis through a common methodology was never challenged by [plaintiffs]." Id. at 1437 (Ginsburg and Breyer, JJ., dissenting). Prior to Comcast, it was a "black letter rule" that plaintiffs need not demonstrate at the certification stage that damages were calculable on a classwide basis. Id. It is not clear that Comcast purported to alter that rule; the ruling may have been "good for [a] day and case only" and not applicable to "the mine run of cases." Id. Even if Comcast did alter the predominance requirement with respect to damage calculations, it is not clear that Comcast's reasoning applies to the ascertainability requirement. Unlike a damage

calculation method in an antitrust case, which an expert may
construct in the abstract, ascertaining exact class membership
may depend on further discovery and the course of the litigation.
Here, for example, the parties cannot yet say how many class
members can be discerned from purchase reports, but that may
become clear as discovery proceeds.  Similarly, the contours of
the class may be shaped by summary judgment motions on various
claims and defenses, which could considerably narrow the group of
individuals to be sampled.  In other words, the methodology that
might be appropriate for determining class membership at the end
of litigation, whether for settlement or trial purposes, may be
very different from the hypothetical methodology suggested at the
certification stage.  It thus makes little sense to deny
certification based on the absence of such a hypothetical
methodology.

        The court therefore concludes that Plaintiffs are not
required to demonstrate precisely who has high zinc fittings at
the certification stage, so long as "an individual [will be able]
to identify himself or herself as a member of the putative class"
if necessary for damages or settlement purposes later in the
litigation.  Knutson, 2013 WL 3746118, at *5.

### c.    Homes With Fittings Stamped ASTM F877.

In a similar argument, C&C contends that commonality is defeated by the inclusion in some homes in Mililani Mauka of fittings marked "F877." As Plaintiffs themselves agree, fittings marked "F877" comply with the ASTM F877 standard, which means that they have "corrosion resistant insert stiffeners." FAC ¶ 28. "[ASTM], formerly known as the American Society for Testing and Materials, is an organization that develops consensus-based standards in industries such as construction and consumer products, to facilitate uniformity and good practices for developers, builders, and contractors in the construction of new homes across the United States." FAC ¶ 25. Fittings marked "F877" comply with the Honolulu Plumbing Code. Therefore, like homeowners who do not have high zinc fittings at all in their home, homeowners with only F877 fittings are not class members. Far from defeating commonality, those not in the class have no impact on the commonality inquiry.

Finally, C&C claims that commonality is defeated because the various plumbing systems in Mililani Mauka have been developed by different manufacturers. However, if two brass fittings are similarly defective, their manufacture by different entities is irrelevant. None of Plaintiffs' claims depends in any way on all of the class members' fittings having been made by any one specific manufacturer.

### 3. Typicality.

C&C does not appear to challenge the Magistrate Judge's finding that the proposed class meets Rule 23's typicality requirement. "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. The "commonality and typicality requirements of FRCP 23(a) tend to merge." Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1041 (9th Cir. 2012). Here, the common injury suffered by the class is also suffered by the potential class representatives, and the typicality requirement is satisfied. The court adopts the Magistrate Judge's well-reasoned finding as to typicality.

### 4. Adequacy.

C&C also challenges certification based on what it says is the inadequacy of the class representatives. The Magistrate Judge found that the named Plaintiffs were adequate class representatives for all but one of the claims against C&C. The one claim that the Magistrate Judge declined to certify was the UDAP claim. The Magistrate Judge concluded that none of the named Plaintiffs had standing to bring the UDAP claim because that claim pertained to conduct allegedly occurring after 2006, and all four named Plaintiffs had purchased their homes before then. On the appeal before this court, Plaintiffs do not appear

24

to challenge that conclusion, or to argue that any of the named Plaintiffs has been subject to a UDAP violation.  See Hawkins v. Comparet-Cassani, 251 F.3d 1230, 1238 (9th Cir. 2001) ("A named plaintiff cannot represent a class alleging [] claims that the named plaintiff does not have standing to raise.").  This court therefore adopts the Magistrate Judge's recommendation that certification be denied with respect to the UDAP claim, and that Plaintiffs be granted leave to amend their Complaint in that regard (e.g., by adding Plaintiffs who can allege a UDAP injury).

C&C's adequacy concerns with respect to the non-UDAP claims relate to the named Plaintiffs' alleged unfamiliarity with the case and lack of participation in "litigation decisions." C&C claims that the named Plaintiffs "lack any understanding about the components of the plumbing systems" and have only a "vague understanding that there's 'something wrong' with their plumbing."  Memo in Opp. at 25-26, ECF No. 117.  C&C further states that the named Plaintiffs did not help decide "what claims would be asserted or what parties would be sued" and are "relying totally on their attorneys as to whether the allegations in the complaint are correct."  Id.

It is true that "class representative status may properly be denied where the class representatives have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class

25

against the possibly competing interests of the attorneys."
Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 61
(2d Cir. 2000) (internal quotation omitted).  However, "[i]t is
hornbook law . . . [that] in a complex lawsuit, [when] the
defendant's liability can be established only after a great deal
of investigation and discovery by counsel against a background of
legal knowledge, the representative need not have extensive
knowledge of the facts of the case in order to be an adequate
representative."  Gunnells v. Healthplan Servs., Inc., 348 F.3d
417, 430 (4th Cir. 2003).  While the named Plaintiffs do not
appear to know either the technical aspects of plumbing
construction or the legal elements of some of their claims, the
record does not suggest that they "have abdicated any role in the
case beyond that of furnishing their names as plaintiffs."  Pryor
v. Aerotek, 278 F.R.D. 516, 529-530 (C.D. Cal. 2011).  Instead,
the named Plaintiffs appear to believe that their plumbing
systems have a construction defect and are sincere in their
desire to explore any misconduct by C&C.  See, e.g., Diane Baker
Decl. ¶¶ 4-5, ECF No. 114-19; Brandon Baker Depo. at 55-56, ECF
No. 120-1.

        C&C does not explain why the named Plaintiffs' lack of
scientific or legal understanding will make them "unable or
unwilling to protect the interests of the class against the
possibly competing interests of the attorneys."  Baffa, 222 F.3d

at 61.  If the case is settled, then the adequacy of the
settlement will be independently assessed by the court.  If the
case continues on to judgment, nothing in the record suggests
that the named Plaintiffs will not vigorously pursue the claims
of absent class members.  C&C's general attack on the named
Plaintiffs' lack of specialized knowledge, without more, is
insufficient to establish that they will be inadequate
representatives for the class.

     If further discovery or future decisions made during
the course of the litigation reveal that the named Plaintiffs are
unable to adequately represent the interests of the class, the
court retains the flexibility to modify certification as
appropriate.  See Cummings v. Connell, 316 F.3d 886, 896 (9th
Cir. 2003) ("Class certification is not immutable, and class
representative status could be withdrawn or modified if at any
time the representatives could no longer protect the interests of
the class.").  At this stage, the court adopts the Magistrate
Judge's finding that the named Plaintiffs are adequate class
representatives.

**B.  Rule 23(b)(3).**

**1.  Predominance.**

     "The Rule 23(b)(3) predominance inquiry tests whether
proposed classes are sufficiently cohesive to warrant
adjudication by representation."  Amchem Products, Inc. v.

_Windsor_, 521 U.S. 591, 623 (1997).  "Though there is substantial overlap between the [commonality and predominance] tests, the [predominance] test is far more demanding"  _Wolin_, 617 F.3d at 1172 (internal quotation omitted).  A class cannot meet the predominance standard if questions relevant to individual claims "will inevitably overwhelm questions common to the class." _Comcast_, 133 S. Ct. at 1433.

C&C first argues that the class cannot meet the predominance requirement because multiple homes in Mililani Mauka do not contain high zinc brass fittings, or have fittings compliant with ASTM F877.  However, as discussed above, homeowners without the allegedly defective fittings or with fittings compliant with ASTM F877 are outside of the class and therefore do not affect the Rule 23 prerequisites.

### a.    Different Warranties.

C&C next argues that the predominance requirement is unsatisfied because "different owners will have recourse to different relief under product manufacturer class action settlements or applicable warranties."  Defendant's Objection at 8, ECF No. 127.  C&C emphasizes in particular four different warranties issued by C&C over the eighteen years that Mililani Mauka has been in development, and the "remarkably different terms" in the four warranties.  _Id._

Predominance can be satisfied if the different agreements "all warrant [class members] against the same things." Brunson v. Louisiana-Pac. Corp., 266 F.R.D. 112, 119 (D.S.C. 2010). If each warranty agreement contains a provision that indemnifies the holder against the harm alleged, then holders of all four warranties share an important common question. If the warranties differ only in ways that are irrelevant to Plaintiffs' claims, a class may still be certified.

Each of the four warranty agreements at issue in this case contains a provision indemnifying residents against defective plumbing equipment. The first form of agreement, which C&C says was in effect until 2002, warrants residents against "substantial defects in materials" used in their homes and defines a defective material as one that "fails to function within accepted building industry standards due to deficiency in design, materials or workmanship." See ECF No. 117-15. The second form, which C&C contends was in effect between 2002 and 2003, warrants against any "defects in equipment, material or workmanship of the [h]ome," judged by conformity with state law and "normal industry practices of the community." See ECF No. 117-16. The third form, apparently in effect from 2003 to 2007, warrants against construction defects that, among other things, "result in the inability of the [home] . . . to provide the functions that can reasonably be expected in a residential

dwelling." See ECF No. 117-17.  Whether a product is defective under this third warranty agreement depends on its conformity with standards defined in a separate document that C&C gave homeowners upon purchase of a home, and conformity with professional and community standards more generally.  The fourth form, in use after 2007, also warrants against construction defects, similarly defined by the terms of C&C's separately provided documents and professional and community standards.  See ECF No. 118-1.

A determination that the use of high zinc duplex brass fittings is not in conformity with state law and/or professional and community standards is highly relevant to all potential class members, irrespective of which of the four warranty agreements they hold.  That is not to say that all four warranties will ultimately allow recovery on a breach of warranty theory, but, deciding whether or not the fittings are defective is undoubtedly a "common answer[] apt to drive the resolution" of each class member's breach of express warranty claim.  Dukes, 131 S. Ct. at 2551 (citation omitted).

No individual issues regarding the warranty agreements overwhelm this common question.  The main "individual" issues that C&C identifies as arising from the differing warranty agreements are the presence of a provision preempting implied warranty claims in the second agreement, and binding arbitration

clauses in the third and fourth agreements.  While the presence
of these provisions may mean that some plaintiffs will be unable
to prevail on some of the claims alleged in the Complaint, it
does not follow that individual issues predominate over common
ones.  Indeed, these four separate warranties, rather than
raising "individual" issues, raise issues that may trigger the
formation of subclasses within the broader class of those
individuals with high zinc duplex brass fittings in their homes.
"Under the provisions of Rule 23(c)(4)(B) [now Rule 23(c)(5)], a
class may be divided into subclasses and each subclass treated as
a class with the provisions of the rule to be construed and
applied accordingly to each class."  Betts v. Reliable Collection
Agency, Ltd., 659 F.2d 1000, 1005 (9th Cir. 1981).  The Rule
23(c)(5) subclass provision is designed for situations like the
one presented here, in which a larger class is divided by issues
common to smaller classes, but joinder of all individual subclass
members is still impracticable.

        When confronted with differences in the terms of
various class members' warranty agreements, courts typically find
it "more appropriate to create subclasses rather than deny
certification outright."  Rosen v. J.M. Auto Inc., 270 F.R.D.
675, 679 (S.D. Fla. 2009).  See also Bittinger v. Tecumseh
Products Co., 123 F.3d 877, 884 (6th Cir. 1997) (finding class
certification proper despite document signed by some class

members releasing defendant from liability); Collins v. Int'l Dairy Queen, 168 F.R.D. 668, 677 (M.D. Ga. 1996) (establishing subclasses when some class members had contracts containing arbitration provisions); Finnan v. Rothschild & Co., 726 F.Supp. 460, 465 (S.D.N.Y. 1989) (some class members' releases or arbitration agreements did not preclude class certification).

No attempt to compel arbitration has been brought to the court's attention, and there does not, thus far, appear to be any conflict of interest among the holders of the four different warranty agreements. This court declines to create warranty subclasses at this stage, noting that, "[e]ven after a certification order is entered, the [district court] remains free to modify it in the light of subsequent developments in the litigation." Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 160 (1982). If it becomes apparent during the course of this litigation that differences arising from the separate warranty agreements predominate over common class wide questions, this court may certify subclasses for the different warranty agreements as necessary. See United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co., 593 F.3d 802, 809 (9th Cir. 2010) ("a district court retains the flexibility to address problems with a certified class as they arise").

### b.    Limitations Periods.

C&C raises two arguments as to the timeliness of claims.

First, C&C argues that different class members will face different limitations periods based on when they discovered the alleged defect.  In particular, C&C notes that section 657-8 of Hawaii Revised Statutes contains a two-year statute of limitations period for bringing construction defect claims that begins to run when "the plaintiff knew or . . . should have discovered that an actionable wrong has been committed[.]"  Ass'n of Apartment Owners of Newtown Meadows ex rel. its Bd. of Directors v. Venture 15, Inc., 115 Haw. 232, 277, 167 P.3d 225, 270 (2007).  According to C&C, different class members may have discovered the alleged construction defect at different times, thereby allegedly creating an individual issue that predominates over any common questions.

It is true that "[e]xamination of whether a particular plaintiff possessed sufficient information such that he knew or should have known about his cause of action will [sometimes] require individual examination of testimony from each particular plaintiff to determine what he knew and when he knew it."  Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 320 (4th Cir. 2006).  However, "the presence of individual issues of compliance with the statute of limitations . . . does not [necessarily]

defeat the predominance of [] common questions." <u>Cameron v. E.M.</u>
<u>Adams & Co.</u>, 547 F.2d 473, 478 (9th Cir. 1976).  When there is no
reason to suspect that potential class members have or will
discover product defects at significantly different times, the
presence of a statute of limitations provision, by itself, is
insufficient reason to compel all potential class members to
pursue their claims individually.  As C&C notes, very few
plumbing systems in Mililani Mauka have manifested defects to
date.  It is undisputed that no individual actions have been
brought against C&C by any Mililani Mauka homeowner.  It is
therefore likely that a significant proportion of the potential
class members are similarly situated insofar as they have only
recently discovered the alleged defect, or do not even know of it
yet.

        If, through further discovery, it becomes clear that
there are actually significant differences in the limitations
periods affecting individual class members, and that those
differences are so diverse as to be irremediable through the
creation of subclasses, then the court may, in its discretion,
decertify the class if necessary.  However, based on the present
record, C&C only speculates as to the possibility that differing
limitations periods may raise individual issues later in the
litigation.  That is an insufficient ground for denying
certification at this stage.

The second timeliness issue identified by C&C concerns the ten-year statute of repose also contained in section 657-8 of Hawaii Revised Statutes. In addition to a two-year limitations period, section 657-8 contains a statute of repose barring any action "to recover damages for any injury to property, real or personal . . . [commenced] more than ten years after the date of completion of the [property]." Haw. Rev. Stat § 657-8. C&C argues that, given the commencement of this action on July 20, 2011, any certified class must be limited to members whose homes were completed after July 20, 2001.

Section 657-8 applies to personal injury and property damage claims. Whether it also covers claims for breach of contract or warranty is not entirely clear. C&C argues that section 657-8 should be read to encompass contract claims, but cites no authority that places that question beyond dispute. Determining that section 657-8 bars the contract claims of some potential class members would be a merits determination. A district court should consider a "merits contention" at the class certification stage only when it "necessarily overlaps" with determining one of Rule 23's prerequisites. Dukes, 131 S. Ct. at 2552; see also Stockwell v. City & Cnty. of San Francisco, 2014 WL 1623736, at *5 (9th Cir. Apr. 24, 2014) ("courts must consider merits issues only as necessary to determine a pertinent Rule 23 factor, and not otherwise"). Here, any such overlap is not

clearly "necessary."  Even if there are class members who will be
unable to recover because of section 657-8's ten-year provision,
those class members can be identified when the merits of C&C's
defense are adjudicated.  That circumstance does not present
"individual" issues that predominate over common questions.

Indeed, if it were required at the certification stage
to exclude all class members whose claims *will ultimately* fail
because of a meritorious affirmative defense, then it would
necessarily follow that all affirmative defenses would have to be
decided on the merits at the point of certification.  That cannot
be so.  Although many individuals within a class may ultimately
be unable to recover, it would eviscerate the distinction between
the certification and merits inquiries if a court were forced to
exclude at certification those individuals whose claims would not
succeed.  This is particularly so in a case like this one, in
which bringing an individual claim will cost more than any likely
recovery.  Although exclusion from a class, unlike a judgment on
the merits, will technically preserve a plaintiff's claim, that
has little value if the claim cannot be effectively brought
outside of a class action.

### c.   Representation of Future Subclasses.

As with questions arising out of the separate warranty
agreements and potentially different limitations periods, a
separate subclass may be required to resolve any litigation over

the applicability of the statutes of repose applicable to Plaintiffs' claims. The potential need to create such subclasses may raise future concerns about the adequacy of representation by the named Plaintiffs. For example, all the current named Plaintiffs have claims within the limitations period, so will not likely adequately represent class members with claims outside of it. Similarly, it may be that none of the named Plaintiffs will be able to represent future subclasses with warranties different from theirs. See, e.g., In re N. Dist. of Cal., Dalkon Shield IUD Products Liab. Litig., 693 F.2d 847, 855 (9th Cir. 1982) ("To prove liability under a breach of warranty theory, representative plaintiffs must exist for each type of warranty[.]"). In particular, if all four named Plaintiffs are subject to a binding arbitration clause, they may be unable to properly represent class members not subject to such a clause.

While the court declines at this stage to create subclasses for each warranty agreement, or subclasses for those who are and are not subject to binding arbitration, it is important to note that any subclass must *independently* meet Rule 23's prerequisites. Betts, 659 F.2d at 1005 (noting that a subclass "must independently meet all of rule 23's requirements for maintenance of a class action"). In other words, each subclass will require a separate named plaintiff capable of representing the members of that subclass. If such a

representative is lacking, members of that subclass will be unable to proceed collectively and will have to litigate their claims as individuals.

Plaintiffs' counsel should ensure that there are sufficient named Plaintiffs such that all *potential* subclasses will have adequate representation. If Plaintiffs intend to amend their Complaint to add claimants with standing to bring a UDAP claim, they may wish to consider adding at the same time claimants subject to each of the four warranty agreements, and, if they are pursuing claims for those whose homes were constructed before July, 20, 2001, at least one claimant with a home built before then.

However, at this early stage, the court declines to deny certification or compel the addition of new parties based on speculation as to what future subclasses will be required. Typically, when subclasses are created, "efficient judicial administration weighs in favor of allowing an opportunity for a new and proper class representative to enter the case and litigate the interests of the subclass." Birmingham Steel Corp. v. Tenn. Valley Auth., 353 F.3d 1331, 1336 (11th Cir. 2003). Plaintiffs may therefore choose to continue this case with only four class representatives, so long as they are aware that a later inability to find an adequate representative for each subclass could lead to decertification of that subclass.

## 2. **Superiority**.

Rule 23(b)(3)'s superiority requirement tests whether "a class is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The rule itself provides a nonexhaustive list of factors relevant to the superiority inquiry:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Id.

C&C does not claim that other actions against C&C by Mililani Mauka residents have been initiated, that there is a more appropriate forum for this litigation, or that there are manageability concerns. Instead, C&C bases its argument that the class fails to meet the superiority requirement solely on the first factor--that class members have an interest in prosecuting individual actions. However, "[w]here damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action." Zinser, 253 F.3d at 1190. Given the relatively low monetary value of each individual resident's

claim and the potentially high cost of product liability litigation, this is a case in which, "[i]f plaintiffs cannot proceed as a class, [they] will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover." Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1163 (9th Cir. 2001) (internal quotation omitted).

C&C responds that class certification would place "an unnecessary cloud on all of the homes in Mililani Mauka that may . . . impact a homeowner's ability to re-finance or sell their home[]." Memo. in Opp. at 32, ECF No. 117. That is not an argument as to why it would be superior *for those with alleged defects* to proceed individually rather than as a class. Instead, it is an argument about why it would be better for those with no alleged defects if those who have alleged defects did not bring their claims at all. For a homeowner with alleged defects, there will likely be the same "cloud" over his or her property whether the homeowner brings an individual or a class action. Notably, C&C provides no reason to think that living with an alleged defect or bearing the cost of replacement oneself is preferable to bringing an action, even for homeowners who may wish to sell or refinance.

Instead, C&C's primary concern is for those homeowners without alleged defects, who may have to demonstrate the absence

of defects to potential buyers.  However, C&C provides no reason to think that demonstrating to potential buyers the absence of high zinc fittings is an especially onerous or costly burden.  In any event, the collateral effect of litigation on nonmembers is not one of the factors listed in Rule 23(b)(3).  C&C cites to no case in which certification was denied on that basis.  In short, C&C's speculation as to the interests of those not before the court is insufficient to defeat certification.

Plaintiffs' action is exactly the kind of case in which "litigation costs would dwarf potential recovery . . . [and therefore] a class action is clearly the preferred procedure." Hanlon, 150 F.3d at 1023.  This court adopts the Magistrate Judge's finding that the proposed class meets Rule 23(b)(3)'s superiority requirement.

**VI.      CONCLUSION.**

The court adopts the Magistrate Judge's recommendation that a class be certified with regard to Plaintiffs' claims against C&C for breach of contract (Count I), product liability (Count II), negligence (Count III), strict liability (Count IV), breach of implied warranty of habitability (Count V), breach of warranty of merchantability (Count VI), and breach of express warranty (Count VII).  The court also adopts the Magistrate Judge's recommendation that certification be denied as to Plaintiffs' claim against C&C under Hawaii's UDAP law (Count

XIII), but gives Plaintiffs leave to amend their Complaint to add new named Plaintiffs for the UDAP claim and, if Plaintiffs so choose, for possible subclasses.

The court modifies the recommendation of the Magistrate Judge with respect to the class definition. The class is defined as:

> All individual and entity homeowners who own homes constructed with brass fittings made from UNS C36000 or UNS C37700 brasses in the housing development known as Mililani Mauka, located in the City and County of Honolulu, Island of Oahu, and all homeowners' associations whose members consist of such individual and entity homeowners. A fitting is defined as a piping component used to join or terminate sections of pipe or to provide changes of direction or branching in a pipe system. The class definition specifically excludes (1) all individuals, entities and associations of homeowners whose homes have only fittings that are compliant with ASTM F877-89 or ASTM F877-93, which standards are included in the 1994 (ASTM F877-89) and 1997 (ASTM F877-93) Uniform Plumbing Codes; (2) any affiliate or employee of Defendant's; and (3) any judicial officer who has presided or will preside over this case.

The current class representatives shall be John Pupuhi Baker, Jr., Diane T. Baker, Branden H. Baker, and Kim Salva Cruz Baker. The current class counsel shall be Melvin Y. Agena, Esq., of the Law Offices of Melvin Y. Agena; Glenn K. Sato, Esq., of the Law Office of Glenn K. Sato; and Graham B. LippSmith, Esq., and Celene S. Chan, Esq., of Girardi Keese.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 28, 2014.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Baker et al. v. Castle & Cooke Homes Hawaii, Inc. et al.; Civil No. 11-00616
SOM-RLP; ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION THAT CLASS BE
CERTIFIED

43